Bissell, P. J.,
delivered the opinion of the court.
On the 1st of August, 1892, Graham, the appellant, sued Evan E. Reno to obtain a money judgment. He took the *331 necessary steps to procure an attachment in aid of his action. The writ was given to the sheriff, who levied on “ all the right, title and interest” of Evan in lots 12 and 13 in Hobart’s Addition to Denver. . In substance, the return is simply the sheriff’s certificate that he had duly executed the writ by a levy on the interest of Evan in the described real estate. The writ was returned August 31st, by order of the plaintiff’s attorney, without service on the defendant. It has been assumed by counsel that the record established the fact that a levy was made on the real estate according to the provisions of chapter 6 of the code of 1887, by the filing of the writ with the clerk and recorder of the county. The evidence concerning the record of the writ is defective, because it contains nothing by way of certificate or otherwise to show the fact of the filing of either writ or notice. The judgment will not be put on this technical inaccuracy, since both counsel have treated the evidence as sufficient on this point, and what was done we regard, for other reasons, as insufficient. This suit was subsequently dismissed, but no actual release of the attempted levy was ever filed with the clerk and recorder. Lots 12 and 13 in Hobart’s Addition were eoncededly the property of Charles S. Reno, the appellee, who was the brother of Evan. There was nothing to show that Evan ever had any interest in the property, while the plaintiff himself proved that the record title was in him. After the suit was dismissed, Charles brought this suit against Graham and the sureties on his attachment bond to obtain judgment for the wrongful levy. Being unable to maintain that action for want of privity, the suit was dismissed as to the sureties, and transmuted into an action against Graham alone for the alleged wrongful levy on the property. To make out his case, Reno proved his record title, the filing of the writ of attachment in the office of the clerk and recorder, the return of the writ without service on the defendant, the dismissal of the action, and sundry facts which he insists established his injury. He proved by the deputy sheriff that S. M. Morgan was Graham’s attorney, and had given the sheriff written *332 orders to levy on this particular realty. He did not prove this was done by Graham’s direction or with his knowledge. He proffered the evidence of another lawyer, Willis Stidger, to show an attempt by Stidger on behalf of Evan to obtain an adjustment of the controversy with Graham. It was insisted and is now claimed that Stidger’s testimony warranted the jury in finding Graham had knowledge of the levy of the writ on Charles Reno’s property to such an extent as would permit the legal inference of the ratification of Morgan’s unauthorized act. Stidger’s testimony does not warrant any such conclusion. He did not testify that he told Graham the writ had been levied on Charles Reno’s reafiy in Hobart’s Addition, nor did he make any statement to him concerning it which would give Graham any information that the writ had been thus levied. Graham himself positively denied having any knowledge whatever of the levy. What damages Reno sustained, if any, resulted from a failure to carry out a trade which he had on foot at about this time with one Allen, whereby one of these lots and its improvements were to be exchanged for some unimproved land in Arvada which belonged to Allen. Reno testified he and Allen had entered into negotiations for the purpose of making the trade, and had substantially come to an understanding that the3r would exchange property on a valuation to which they had both assented. When it comes to an examination of the proof, it would appear the two properties were respectively valued at the same figure. Both were incumbered, and when the trade would be completed each as before would be the owner of an equity of one thousand dollars in the respective properties. In other words, if the trade had been made, Reno would have had a thousand dollar equity in the Arvada land, and Allen would have had a thousand dollar equity in one of the lots in Hobart’s Addition. The complaint contained no averment of malice on Graham’s part with reference to the levy of the writ, nor was there any proof which tended in that direction. On these facts the case was submitted to *333 the jury, which rendered a verdict of one thousand dollars in favor of Reno, from which Graham appeals.
It is almost superfluous to decide some questions which counsel argue, since if the court be right concerning its conclusions respecting the levy, the suit might be finally disposed of without their determination. It is not easy to see how Graham can be held responsible for Morgan’s acts in directing the sheriff to levy on property which belonged to Charles Reno, and in which his brother Evan had apparently no interest. The authorities seem to hold the principal is not liable for these unauthorized acts of the attorney. Welsh et al. v. Cochran et al., 63 N. Y. 181.
It is impossible for the plaintiff to support his position that he may possibly have a right to maintain his suit on the theory of slander or defamation of title. His action was not so conceived, and the complaint lacks the allegation, and the record is without the proof of malice, which is a prerequisite to a successful suit for the slander of title. Kendall v. Stone, 5 N. Y. 14; Andrew v. Deshler, 45 N. J. L. 167.
The fundamental question, however, lies deeper in the structure of this suit than do any of these matters. Wherever the wrongful levy of a writ of attachment is the gravamen of a suit, the burden must of necessity be with the plaintiff to show that in fact a levy was made, unless it concerns personalty, and there be some circumstances of dispossession or disturbance of the owner’s rights which will sustain a suit. Where, as in this case, the levy is on realty, it is evident that what is done must, under the statutes and the law, amount to an actual paper levy to warrant the suit because of the attaching creditor’s wrongful act. Our statute concerning attachments — section 104, code of 1887 — and the preceding section 97 definitely indicates what the officer must do to make his paper levy. According to the terms of the last section, the writ must direct the sheriff to serve it on the defendant. This he did not do in the present case. By the terms of the first section, two methods are provided for the attachment of real estate. Since the first only concerns an *334 attachment where the record title is with the defendant, it may he left unconsidered. According to the second- subdivision of the section, where real property belongs to a defendant and is held by some person other -than he, or stands on the records of the county in the name of some other person than the defendant, the property is attached, first, by leaving with the person in whose name the title stands, or-his agent, a copy of the writ and a notice that the property or some interest belonging to the defendant in the suit is attached; and, second, by filing a copy of the writ and the notice with the recorder of the county. It is thus distinctly provided by the act that the sheriff must not only serve the notice and the writ upon the person in whose- name the title stands and file his writ with the clerk and recorder of the county, but he must likewise file a copy of the notice with the recorder when he files there the copy of his writ. Both steps are precedent to a valid levy of a writ of attachment on property thus circumstanced as to its title. A failure to pursue the statutory requirements is almost universally held fatal to a levy. Wade on Attachment, sec. 126; Maskell v. Barker, 99 Cal. 642; Robertson v. Hoge, 83 Va. 124; Main et al. v. Tappener et al., 43 Cal. 206; Sharp v. Baird et al., 43 Cal. 577; Arms v. Burt, 1 Vt. 100 (301) ; Repine v. McPherson, 2 Kan. 340.
These authorities very clearly sustain the position that there must be a strict compliance with the statutory provision to make a levy valid and a lien upon real property. Since this is true, it must necessarily follow that what was done did the plaintiff Reno no harm, neither obscured nor clouded his title, and if it be an injury at all, it is what is well known as damnum absque injuria.
The evidence likewise discloses the fact that no harm came to Reno by reason of the levy. He proved no actual damage, nor did the failure to complete the trade proceed from the attachment. The case of Kendall v. Stone, above cited, very clearly holds that where it appears the parties abandon their contract, and there is no refusal on the part of one to take because of the attack on the other’s title, and the pro *335 eeediug is purely voluntary, the abandonment of tbe contract will destroy tbe plaintiff’s cause of action. As between Reno and Allen, while they had discussed and evidently substantially concurred in the terms of their arrangement, the contract was still uncompleted; abstracts were to be exchanged, and the parties to be given an opportunity to satisfy themselves concerning the status of the other’s title. While Reno stood in this position the alleged levy was made, and thereupon, of his own motion, he notified Allen that he was unable to carry out his agreement and the trade was off. The barter was abandoned by Reno of his own volition, and not because of any objection interposed by Allen. When he saw fit to withdraw from a trade which was binding upon neither party in the absence of a written agreement concerning the realty, it cannot be legally said that the trade and its advantages, if any, were lost to him because of the sheriff’s acts under the writ. Having voluntarily retired from the negotiation to which the other party yielded his assent, no damage was done to him by the commencement or prosecution of the other suit.
For these reasons, it is manifest the judgment of the court below was wrong, and must be reversed.

iReversed.