482 P.2d 432 (1971)
Stephen L. R. McNICHOLS, as Special Administrator of the Estate of Simon T. Parsons a/k/a Ted Parsons, a/k/a S. T. Parsons, Deceased, Plaintiff in Error,
v.
CONEJOS-K CORPORATION, a Colorado corporation, Defendant in Error.
No. 70-506. (Supreme Court No. 23773.)
Colorado Court of Appeals, Div. II.
February 9, 1971.
Rehearing Denied March 2, 1971.
*433 Saunders, Dickson, Snyder & Ross, P. C., Wayne J. Fowler, Denver, for plaintiff in error.
J. H. Howard, Denver, for defendant in error.
Selected for Official Publication.
ENOCH, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
This is a slander of title case. Conejos-K Corporation brought this action against S. T. Parsons, alleging that Parsons injured Conejos-K by disparaging its title to the "Hot Creek Ranch." The complaint alleged that while Conejos-K was negotiating with the Game, Fish & Parks Department of the State of Colorado to sell the ranch for $110,000, Parsons maliciously and without cause, falsely represented to the Department that he could deliver clear title to the ranch for $84,700. It was averred that the Department thereafter refused to continue negotiating with Conejos-K. Stephen L. R. McNichols, who was appointed Special Administrator to the Estate of S. T. Parsons, upon Parsons' death, filed a general denial to the above claim. Thereafter, trial was held before the court, which entered judgment for Conejos-K in the amount of $10,000. McNichols seeks review of this judgment.
The record shows that Conejos-K purchased the ranch from Parsons in March of 1962, with the expectation of subdividing it and reselling the smaller parcels of land. As a result of that sale, Parsons received a down payment of $20,650 and a promissory note in the amount of $65,420.10 secured by a deed of trust. No payments on the principal of the note were ever made, and by 1965 Conejos-K was also in arrears as to the interest due on the note. Conejos-K's plan to sub-divide did not materialize. Consequently, it sought to dispose of the ranch as a unit. Prior to and during 1965, Conejos-K offered to sell the Hot Creek Ranch to the Department for various prices ranging between $110,000 and $160,000. All of Conejos-K offers to sell were rejected by the Department prior to May 1965.
The Chief Land and Acquisition Officer of the Game, Fish & Parks Department *434 testified that the Department had been interested in acquiring the ranch since 1955 and that early in 1965, it became actively interested in purchasing it as a federal aid project. Consequently, the Department conducted a biological suitability study on the ranch, the favorable results of which were available in the latter part of March 1965. Shortly thereafter, the Department ordered an independent appraisal to determine the market value of the ranch. During the latter part of May 1965, the Department received the appraisal which showed the property to have a value of $84,700. The Land and Acquisition Commission considered the matter of purchasing the ranch at its meeting in late May of 1965, but postponed making a decision until some of the members of the Commission had an opportunity to view the property personally.
The Chief Acquisition Officer further testified that he was approached by Parsons early in 1965. At that time Parsons indicated that he was considering foreclosing on the deed of trust and that he would consider selling the ranch to the Department if it were interested. A selling price was not discussed at this meeting.
The Director of the Department testified that he had a conversation with Parsons prior to June 1, 1965, concerning the Hot Creek Ranch and that Parsons represented at that time that he could deliver merchantable title and would sell the ranch for $85,000.
Conejos-K claims that Parsons' statements to both the Chief Acquisition Officer and the Director of the Department were manifestly false and derogatory to the title of Conejos-K in the property and as a result, the Commission terminated its negotiations with Conejos-K.
The Commission decided to purchase the ranch at the appraised value of $84,700. An offer to purchase, dated June 8, 1965, was extended to and accepted by Parsons. This contract was subject to the following contingency: "Parties further agree that this contract is contingent on S. T. Parsons obtaining a Quit Claim Deed from the Conejos-K Corporation of El Paso, Texas." Before any performance occurred under this contract with Parsons, an identical contract, with the exception of the contingency, was sent to Conejos-K. The president of Conejos-K testified that the Department's offer to buy at $84,700 was rejected and that a counteroffer to sell at $110,000 was again submitted by Conejos-K. Thereafter, foreclosure on the deed of trust took place and the ranch was ultimately sold by the estate of S. T. Parsons to the Department for $84,700.
On these facts, the trial court found that the required elements of slander of title were met and entered judgment against the defendant in the amount of $10,000.
We agree with the defendant's alleged error that the judgment is not supported by the evidence.
The elements of the tort of slander of title are:
1. Slanderous words
2. Falsity
3. Malice
4. Special damages
See, 50 Am.Jur. #2d, Libel and Slander § 539, et. seq., 53 C.J.S. Libel and Slander § 269, et. seq.; Cawrse v. Signal Oil Co., 164 Or. 666, 103 P.2d 729, annotated at 129 A. L.R. 174; Graham v. Reno, 5 Colo.App. 330, 38 P. 835.
Although Parsons' statements to the Director of the Game, Fish & Parks Department and its Chief Land Acquisition Officer raised some question as to how long Conejos-K might retain title to the ranch because of the note being in default, such statements are not in themselves actionable. The testimony of these witnesses indicated that Parsons never represented that the property was his. He merely stated that he could deliver merchantable title. Hence, no false statement was made by Parsons.
Conejos-K also failed to prove malice, which is another essential element of a cause of action for slander of title. *435 Graham v. Reno, supra. Malice in this context is an intention to vex, injure or annoy. Cawrse v. Signal Oil Co., supra. The only finding made by the trial court possibly bearing on malice was that "Had it not been for the intervention of S. T. Parsons the commission would have purchased the property from the plaintiff at a negotiated amount between $84,700 and $110,000." This is not a finding of malice and it is unsupported by the evidence. The record clearly shows that the Department was not amenable to purchasing the property at any price over $84,700 and that Conejos-K's last offer to sell at $110,000 was unequivocally rejected.
In addition, the evidence does not support the finding of any damages. In Zimmerman v. Hinderlider, 105 Colo. 340, 97 P.2d 443, the Supreme Court said:
"In order to show that the words uttered have caused injury to the plaintiff, it is generally necessary to aver and show that they were uttered pending some treaty or public action for the sale of the property, and that thereby some intending purchaser was prevented from bidding or competing * * * If the plaintiff has merely a general intention to sell, * * * the plaintiff does not suffer any damage from their utterance."
The evidence presented in this case merely shows that Conejos-K had a general intention to sell. No contract was frustrated and Conejos-K was not prevented from selling by any action of Parsons. In fact, Conejos-K rejected the Commission's offer to purchase by counteroffering to sell the ranch at $110,000.
We hold that Conejos-K failed to prove the elements of slander of title. The judgment of the trial court is therefore reversed with directions to set aside the judgment and dismiss the action.
SILVERSTEIN, C. J., and COYTE, J., concur.