LANE ET AL., RESPONDENTS, *v.* LANE POTTER LUMBER CO.,
LTD., APPELLANT.

(No. 2,772.)

(Submitted February 21, 1910. Decided March 2, 1910.)

[107 Pac. 898.]

*Logs and Logging—Liens—Employment—Evidence—Insufficiency.*

Logs and Logging—Liens—Statutes—Strict Construction.
    1.  Section 5819, Revised Codes, giving liens to persons performing
labor in logging operations, creates a right where none existed before;
hence the requirements as to the steps necessary to secure them must be
strictly pursued.

Same—Employment—Evidence—Insufficiency.
    2.  Plaintiff proceeded under section 5819, Revised Codes (prior to
amendment by Laws of 1909, p. 66), to secure a lien on logs in the
cutting of which he had performed labor.  The section provides that
the lien claimant must have been employed "by the owner or his agent."
The evidence showed that plaintiff had been hired, not by the defend-
ant company or its agent, but by an independent contractor.  *Held,*
that the evidence failed to establish a lien as against the defendant
company, the owner of the logs.

*Appeal from District Court, Sanders County; Henry L.
Meyers, Judge.*

ACTION by Neil Lane and others against the Lane Potter Lum-
ber Company, Limited, and another.  From a judgment for
plaintiffs and an order denying a new trial, defendant named
appeals.  Reversed and remanded for further proceedings.

*Mr. James A. Walsh* submitted a brief in behalf of Appel-
lant, and argued the cause orally.

The Act in question contains more than one subject, and is
in violation of section 23 of Article V of the Constitution.
The title is ambiguous and uncertain, the subject is not clearly
expressed.  The three subjects and the three classes of liens
provided for in the Act are not clearly expressed in the title.
The fact that a lien is provided in each of the three sections does
not make it the same subject, and that subject is not expressed

in the title. The distinction between the different classes of liens is demonstrated wherever the question has been presented to the court. (See *Babka* v. *Eldred*, 47 Wis. 189, 2 N. W. 102, 559; *Dexter, Horton & Co.* v. *Sparkman*, 2 Wash. 165, 25 Pac. 1070; *Singer* v. *Wallace*, 8 Wash. 576, 36 Pac. 466; *Ryan* v. *Guilfoil*, 13 Wash. 373, 43 Pac. 351; *Winsor* v. *Johnson*, 5 Wash. 429, 32 Pac. 215.)

The provision of the Act concerning attorneys' fees is unconstitutional. It will, no doubt, be contended that in the case of *Wortman* v. *Kleinschmidt*, 12 Mont. 316, 30 Pac. 280, this court upheld the Act granting attorneys' fees. Since the decision of that case, the question was before the supreme court of the United States, in the case of *Gulf etc. R. Co.* v. *Ellis*, 165 U. S. 160, 17 Sup. Ct. 255, 41 L. Ed. 666, where it was held that a statute granting an attorney fee is in conflict with the Fourteenth Amendment of the United States Constitution, and therefore void. (See, also, *Builders' Supply Depot* v. *O'Connor*, 150 Cal. 265, 119 Am. St. Rep. 193, 88 Pac. 982, 17 L. R. A., n. s., 909.) In *Davidson* v. *Jennings*, 27 Colo. 187, 83 Am. St. Rep. 49, 60 Pac. 354, 48 L. R. A. 340, the *Wortman Case* is cited, with the statement that the dissenting opinion of Justice De Witt is better supported by reason and authority. (See, also, *Grand Rapids Chair Co.* v. *Runnels*, 77 Mich. 105, 43 N. W. 1006; *Wilder* v. *Railway Co.*, 70 Mich. 384, 38 N. W. 289; *Durkee* v. *Janesville*, 28 Wis. 471, 9 Am. Rep. 500; *South etc. R. R. Co.* v. *Morris*, 65 Ala. 199; *Smith* v. *Railroad Co.*, 75 Ala. 451; *Louisville etc. R. R. Co.* v. *Baldwin*, 85 Ala. 627, 5 South. 311, 7 L. R. A. 266; *Brown* v. *Railroad Co.*, 87 Ala. 370, 6 South. 295; *Paddock* v. *Missouri Pac. Ry. Co.*, 155 Mo. 524, 56 S. W. 453; *Phenix Ins. Co.* v. *Hart*, 112 Ga. 765, 38 S. E. 67; *Openshaw* v. *Halfin*, 24 Utah, 426, 91 Am. St. Rep. 796, 68 Pac. 138; *Atkinson* v. *Woodmansee*, 68 Kan. 71, 74 Pac. 640, 64 L. R. A. 325; *Hocking Val. Coal Co.* v. *Rosser*, 53 Ohio St. 12, 53 Am. St. Rep. 622, 41 N. E. 263, 29 L. R. A. 386; *Randolph* v. *Supply Co.*, 106 Ala. 501, 17 South. 721; *Merced Lumber Co.* v. *Bruschi*, 152 Cal. 372, 92 Pac. 844.) In the light of these later

authorities we respectfully ask the court to reconsider the rule adopted in the *Wortman Case.*

Statutes of this character cannot be extended to meet cases not within their scope, no matter how meritorious they may be. (*Morris* v. *Louisville etc. R. Co.*, 123 Ind. 489, 24 N. E. 335.) This lien is a statutory right. It does not exist at common law. A person, to claim the right, must bring himself clearly within the statute and show that he performed the work for, and at the instance of the owner or his agent. Unless such is shown he cannot have any lien upon the logs. The words providing for a lien upon the logs, belonging to the person for whom the work and labor was performed, whether such work was done at the instance of the owner or his agent, are restrictive, and the work must have been performed for and at the instance of the owner or his agent before the lien can apply. Where we find decisions giving a lien to a person who does work for a contractor or a subcontractor, it will be found that there is a statute which permits a lien to be obtained in such case. This is the case in Michigan, California, New Mexico, Arizona, Nebraska, Nevada and other states. In Wisconsin a lien is given to any person who performs labor ''for or on account of the owner, agent, or assignees''; and in the case of *Gross* v. *Eiden,* 53 Wis. 543, 11 N. W. 9, it was held that a person who performed labor for an independent contractor was not entitled to a lien. To the same effect are the cases of *Wright* v. *Terry,* 23 Fla. 160, 2 South. 6; *Jacobs* v. *Knapp,* 50 N. H. 71.

An independent contractor is not in any sense the agent of the person with whom he contracts. He is independent and acts independently. He receives so much for his work. He hires his own men. He has no authority to represent the man with whom he contracts or bind him in any way. (*Dellecella* v. *Haronie,* 34 Mo. App. 179; *Ladd* v. *Grand Isle,* 67 Vt. 172, 31 Atl. 34; Mechem on Agency, 747; *Holt* v. *Whatley,* 51 Ala. 569; *De Forrest* v. *Wright,* 2 Mich. 368; *Riley* v. *State Steamship Co.,* 29 La. 791, 29 Am. Rep. 249; *Barry* v. *City of St. Louis,* 17 Mo. 121; *Forsyth* v. *Hooper,* 11 Allen, 419; *Hilliard* v. *Rich-*

*ardson,* 3 Gray, 349, 63 Am. Dec. 743; *Linton* v. *Smith,* 8 Gray, 147; *Kelly* v. *New York,* 11 N. Y. 432; *McCafferty* v. *Spuyten Duyvel & P. M. Ry. Co.,* 61 N. Y. 178, 19 Am. Rep. 267; *King* v. *New York Central,* 66 N. Y. 181, 23 Am. Rep. 37; *Burke* v. *Norwich W. R. Co.,* 34 Conn. 474; *Pfau* v. *Williamson,* 63 Ill. 16; Ewell's Evans on Agency, 399, 645; *Harrison* v. *Collins,* 86 Pa. 153, 27 Am. Rep. 699.)

There was a brief in behalf of Respondents by *Messrs. Hall & Patterson,* and oral argument by *Mr. Patterson.*

The contention that the Act is unconstitutional on the ground that its subject is not clearly expressed in the title and that the Act contains more than one subject has no merit. (See *Yegen* v. *Board of Commissioners,* 34 Mont. 79, 85 Pac. 740; *State* v. *Mc-Kinney,* 29 Mont. 375, 74 Pac. 1095, 3 Ann. Cas. 824; *State* v. *Mitchell,* 17 Mont. 67, 42 Pac. 100; *Jobb* v. *Meagher County,* 20 Mont. 424, 51 Pac. 1034; *Snook* v. *Clark,* 20 Mont. 230, 50 Pac. 718; *State* v. *Courtney,* 27 Mont. 378, 71 Pac. 308; *State* v. *Bernheim,* 19 Mont. 512, 48 Pac. 441.)

Section 5820, Revised Codes, is broad enough to provide a lien under the circumstances in this case. This Act is remedial and should be construed liberally. (*McGlauflin* v. *Wormser,* 28 Mont. 181, 72 Pac. 428; *Davis* v. *Alvord,* 94 U. S. 545, 24 L. Ed. 283; *Mochon* v. *Sullivan,* 1 Mont. 470.) The liens were drawn in accordance with the form and substance prescribed by the lien Act. Under the Mechanic's Lien Act it has been held repeatedly that one entitled to a lien is not limited to the reasonable value of the services. (*Merrigan* v. *English,* 9 Mont. 113, 22 Pac. 454, 5 L. R. A. 837; *Duignan* v. *Montana Club,* 16 Mont. 189, 40 Pac. 294; *Gould* v. *Barnard,* 14 Mont. 335, 36 Pac. 317; *Miles* v. *Coutts,* 20 Mont. 47, 49 Pac. 393; *Davis* v. *Alvord, supra.*)

Section 5819 provides for a lien for logging done at the instance of the owner or agent. The word "instance" is intended to be broad enough to cover all cases. The contractor in any

event is the agent of the owner. (*Merrigan* v. *English, supra,* and cases cited; *Duignan* v. *Montana Club, supra.*)

Upon the question of the constitutionality of the Act with reference to the allowance of attorneys' fees, the decision in *Wortman* v. *Kleinschmidt,* 12 Mont. 316, 30 Pac. 280, stands as the law at the present time. (See, also, *Helena Steam Heating & Supply Co.* v. *Wells,* 16 Mont. 65, 40 Pac. 78; *Murray* v. *Swanson,* 18 Mont. 533, 46 Pac. 441; *Hill* v. *Cassidy,* 24 Mont. 108, 60 Pac. 811.) The case of *Gulf C. & S. F. R. Co.* v. *Ellis,* 165 U. S. 160, 17 Sup. Ct. 255, 41 L. Ed. 666, cited by counsel is not in point. That case was decided, as were the authorities therein cited, upon an Act which was not made to apply universally, but solely to railway corporations.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by the plaintiff Neil Lane and forty-six others to recover amounts alleged to be due them, respectively, for services rendered to the defendants at their special instance and request in "cutting, manufacturing, obtaining, securing, skidding, and hauling" 1,200,000 feet of logs, and to establish and enforce liens upon the logs for the amounts claimed. In addition to the facts necessary to be stated to warrant recovery, the complaint alleges that the steps required by the statute as to notice to secure liens had been taken. The answer of the defendant McGill admits that the amounts claimed are due and payable as alleged. The defendant corporation, while asserting that it is the owner of the logs, denies generally and specifically all the material allegations in the complaint. The court found for the plaintiffs, and rendered and caused to be entered a judgment declaring the amount each was entitled to recover, with interest and costs, including attorney's fees, and directing the logs to be sold to satisfy the judgment. From this judgment and an order denying a new trial, the defendant corporation has appealed.

The integrity of the judgment is assailed on the ground that the Act of the legislature creating liens of the class sought to be established in this action (Session Laws 1899, p. 126; Revised Codes, secs. 5819-5836) is invalid, in that it contains more than one subject, in that its title is ambiguous and uncertain, and in that in providing that an attorney's fee may be recovered as a part of the costs in favor of the lienor it is in violation of section 6, Article III, of the State Constitution, and section 1 of the Fourteenth Amendment to the Constitution of the United States. It is also assailed on the ground that the evidence is insufficient to establish liens in favor of any of the plaintiffs. The last contention must be sustained. Since this is so, it will not be necessary to consider whether the legislation is void on constitutional grounds or not.

The first section of the Act (Revised Codes, sec. 5819) creates a lien in favor of "every person performing labor upon, or who shall assist in obtaining or securing sawlogs, piling, railroad ties, * * * whether such work or labor was done at the instance of the owner of the same or his agent." By the second section (section 5820) a lien is created in favor of "every person performing work or labor or assisting in manufacturing sawlogs and other timber into lumber * * * upon such lumber while the same remains at the mill where it was manufactured, * * * whether such work or labor was done at the instance of the owner of such logs or his agent or any contractor or subcontractor of such owner." This section defines the term "lumber" to mean "all logs or other timber sawed or split for use, including beams, joists, planks, * * * of whatsoever nature or description manufactured from sawlogs or other timber." The third section (section 5821) provides for a lien in favor of the owner of the land upon which the sawlogs or other timber is cut. It is apparent from a cursory examination of it that this legislation was enacted to create an equity in favor of three classes of persons, to-wit: (1) Those who are employed to obtain or secure rough timber and transport it to the mill for manufacture; (2) those who are employed to assist in the manu-

facture of it into lumber in any form; and (3) those who own the land from which the timber is taken. The plaintiffs fall in the first class, for they claim an equity by virtue of labor expended in obtaining and securing sawlogs; that is, rough timber. The validity of the judgment declaring liens in their favor must therefore rest upon the answer to the inquiry: What does the evidence tend to show as to the character of the work done by the plaintiffs, and as to who employed them to do it?

The statute creates a new right. Therefore the requirements as to the steps to be taken to secure it must be strictly pursued (*McGlauflin* v. *Wormser,* 28 Mont. 177, 72 Pac. 428); and the evidence must show, that, when the labor and services were performed, the plaintiff occupied the relation toward the defendant designated in the statute out of which the right to the lien arises; for it is of no moment what services are rendered, or at whose instance they are rendered, if the evidence does not bring the plaintiff clearly within the class of those whom the legislature intended to favor. While in the second section of the Act the employment may be by the defendant or his agent, or "any contractor or subcontractor of such owner," in the first section the employment may be only "by the owner * * * or his agent." Why this distinction was made we may not stop to inquire. It may have been, and doubtless was, the result of oversight in the person who drafted the measure. After the claims involved in this case arose, the legislature amended the first section so as to render it even broader than the second section in defining the agency of employment (Laws 1909, p. 66); but that this is so does not aid in the determination of this case. It merely confirms the view that the omission referred to was the result of oversight. However this may have been, the distinction is substantial, and may not be ignored. The notice of lien recites that the employment was by McGill and the Lane Potter Lumber Company. The complaint alleges the same, except that it mentions the corporation by its true name. The evidence showing the relation of the parties is the following: Upon his examination in chief, the defendant McGill, a witness

for the plaintiffs, testified: "I was logging for the Lane Potter Lumber Company. Q. Where? A. In November and December at Heron, Montana, near Heron, Montana, Sanders county. Q. What did you do while there with regard to employing men in or about the logging? A. I don't understand the question. Q. Did you employ men to do the logging? Get out the logs? A. Yes, sir. Q. Where was the timber that you were to get out and do the logging upon? A. It belonged to the Lane Potter Lumber Company, near Heron. Q. Which way from Heron? A. West of Heron about two and one-half miles. Q. In what county and state? A. Sanders county, Montana. Q. What was the quantity or number of acres, for instance, that you were working upon and getting out this lumber? A. I was to log off three 40's. Q. Do you know what section that was in? A. Section 30. I forget the minutes of it. Q. You say it was about how many miles west of Heron? A. About two and one-half miles. Q. Did you establish a camp there? A. Yes, sir. Q. What were you required to do yourself and the men you employed with regard to getting out the lumber? A. We worked at it and skidded it, and cut roads and built camps in there and cut the timber. Q. What were you to do with the lumber? A. Put it on the banks of the Clark's Fork river. Q. In what shape was it to be put there? A. Decked up. Q. In logs? A. In logs; yes, sir. Q. They were not to be sawed into lumber? A. No, sir. Q. Did you employ Neil Lane to work for you? A. Yes, sir. Q. Have you looked over the complaint that was filed in this case and the liens that were filed? A. I have seen some of the liens. Q. Did you see all of them? A. Yes; I saw all of them, but I didn't read all of them. A. In what manner were you working for the Lane Potter Lumber Company? A. I had the contract putting in these logs. Q. What was your contract to do? A. To put in these logs, deliver these logs on the bank of the river for so much a thousand; $5 a thousand. Q. Were the plaintiffs in this case employed by you to get out that timber, in carrying out that contract you had with the Lane Potter people? A. I

don't just understand the question. They were working on this timber. Q. They were working for you in carrying out this contract? A. Yes, sir. In carrying out this contract. Q. How many thousand feet of logs or timber were cut on this contract by these plaintiffs? A. Something over 1,000,000 feet— 1,300,000, more or less. Q. Where is that timber at the present time? A. At the place on the skids. Decked on skids what is cut. Q. Near the river? A. No, sir; on the ground where it was cut. Q. And you had a contract with the Lane Potter Lumber Company to deliver and cut these logs at the landing at so much a thousand, and these men were employed by you in doing that work? A. Yes, sir. Q. And it was in cutting these logs to deliver them at the landing under your contract that they performed the work? A. Yes, sir. Q. You say there is a million of feet of logs up there? A. Yes; 1,000,000 feet and better.''

During the course of the trial it became apparent that there was a variance between the name of the defendant corporation as stated in the notice of lien, and that stated in the complaint, the former designating it as "Lane Potter Lumber Company," and the latter "Lane Potter Lumber Company, Limited." In order to estop the corporation from availing itself of this technical objection to the notice, the plaintiffs introduced in evidence in rebuttal, among others, the following letter, as tending to show that the company did business in the name stated in the notice:

"Clark's Fork, Idaho, December 5, 1907.

"To the Men Employed by John McGill, Logging Timber Belonging to the Lane-Potter Lbr. Co.

"You are hereby notified that after 12 o'clock noon on the 6th day of December, 1907, that we will not be responsible for the payment of any labor performed after the above date.

"Lane Potter Lbr. Co.,

"By Wm. Potter, Mgr."

Disregarding the technical variance in the name of the corporation thus appearing between the allegations of the complaint

and the evidence, the evidence falls far short of showing that the employment of plaintiffs was by this defendant, either directly or through McGill as its agent. If McGill's evidence means anything at all, his relation to the corporation was that of an independent contractor, and the employment of the men was by him only. He was to get out the logs and deliver them on the river bank for $5 per thousand feet, and he employed the plaintiffs. In other parts of his testimony he states the price per month that he—not his codefendant—had agreed to pay them. It is not intimated by him either in the portion of his testimony quoted above, or elsewhere, that he was authorized by the company to act for it in any way. Nor is his testimony aided by any statement in the letter of the corporation quoted; for it is apparently addressed, not to the men in the employ of the company, but "to the men employed by John McGill." It is true that it implies, perhaps, that there may be some sort of liability to plaintiffs on the part of the company as guarantor or otherwise for wages earned up to the time at which it was written. Yet in the light of McGill's statement and the fact that it was addressed to the men employed by McGill as such, the conclusion seems inevitable that the employment was by McGill exclusively. If they have any right against the company, it is upon some other theory than that stated in the complaint or shown by the evidence.

It is argued with much plausibility that the first section of the Act (Revised Codes, sec. 5819) is broad enough in its terms to cover all cases in which labor has been expended on logs belonging to another. In any event, it is said that the contractor is the agent of the owner. In support of this contention are cited the cases of *Merrigan* v. *English*, 9 Mont. 113, 22 Pac. 454, 5 L. R. A. 837, and *Duignan* v. *Montana Club*, 16 Mont. 189, 40 Pac. 294. It must not be overlooked, however, that these are cases involving mechanics' liens, and arose under a statute materially different in its provisions from the one under consideration here. As amended from time to time, this statute has been in force in this jurisdiction since 1872. (Revised Statutes 1879,

Div. 5, sec. 820 *et seq.;* Comp. Stats. 1887, Div. 5, sec. 1370 *et seq.;* Code Civ. Proc. 1895, sec. 2130 *et seq.;* Revised Codes, secs. 7290-7301.)   The history of it is given in detail in *Merrigan* v. *English.*   It is sufficient to say of it here that it is broad enough in its terms to make a contractor in any degree the agent of the owner to the extent of charging his property with a lien in favor of anyone who has expended labor upon it or has furnished material for its improvement.   In the statute before us, however, the use of the words, "Whether such work or labor was done at the instance of the owner of the same or his agent," implies that the employment may be made only by the owner or one employed by him as agent.   One who occupies toward the owner merely the relation of contractor is not his agent for any purpose, unless by the terms of the contract authority is given him to act as such.   As we have shown, the evidence does not show that McGill was the agent of the corporation.

However much we might be disposed to extend the terms of the first section of the statute, and, in view of the broad provisions contained in the second section, to hold that the contractor is the agent of the person under whom he holds the contract for the purpose of fixing a lien upon his property in favor of the employees of the contractor, we have no power to do so.

The judgment and order are reversed, and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.