LOVE BROTHERS, Incorporated, Appellee, v. J. C. MARDIS, Appellee, et al., Appellant.

MECHANICS' LIENS: Personal Contracts with Owner's Agent.
1  Contracts by an agent in his own name, (1) pursuant to his contract with the owner, (2) for the benefit of the owner, and (3) with the owner's approval, bind the owner's property, even though the materialman originally supposed he was contracting with the owner's contractor.

**PRINCIPAL AND AGENT:** Retaining Benefit and Denying Author-
ity. A principal may not retain the benefits of a contract and
then deny the authority of an agent to enter into such contract.

**MECHANICS' LIENS:** Timely Filing. The issue whether a lien
was filed within 30 days becomes quite unimportant when it
is conceded that the materialman filed within 90 days, and the
court finds that he was a principal contractor.

*Appeal from Polk District Court.*—THOMAS J. GUTHRIE,
Judge.

MARCH 10, 1920.

REHEARING DENIED JULY 6, 1920.

SUIT to foreclose a mechanics' lien. There was a de-
cree for the plaintiff, and the defendant Iowa Congregation-
al Hospital Association has appealed.—*Affirmed.*

*Craig T. Wright and L. M. Grimes,* for appellant.

*Halloran & Starkey,* for appellee.

EVANS, J.—I. The defendant Mardis is known in the
record as the "contractor," and the Hospital Association
as the "owner." In August, 1914, they entered into a con-
tract for the construction of a hospital
building in the city of Des Moines. Mardis,
as contractor, undertook the construction
for the Hospital Association as owner. The
plaintiffs furnished certain material and performed certain
labor in the erection of stairways and elevators in said im-
provement, pursuant to contract with Mardis. The con-
tract between the Hospital . Association and Mardis is
denominated in the record as a "percentage contract:" that
is to say, Mardis did not agree to construct the building
for any fixed price. He did agree to construct the same
for actual cost, plus a profit to himself of ten per cent of

*1. MECHANICS' LIENS: per-sonal con-tracts with owner's agent.*

such cost. The contract constituted Mardis as the agent of the Hospital Association, for the purpose of employing all labor and purchasing all material to be used in the performance of the contract. All his contracts of employment and purchase were to be subject to the approval of the building committee of the Hospital Association. One of such contracts entered into by Mardis was with the plaintiff herein, and out of such contract this suit has arisen. The contract was entered into by Mardis in his own name, and not in the name of his principal. At the time it entered into such contract with Mardis, the plaintiff supposed that it was dealing with him as a contractor. Later, it discovered the terms of the contract between Mardis and the Hospital Association. Thereupon, it claimed to recover from such Hospital Association as its principal debtor. It also filed a mechanics' lien. It claims its right to a lien, either as a principal contractor or as a subcontractor.

The general nature of the defense set up is that the plaintiff had chosen to enter into a contract personally with Mardis, and that it must look to Mardis alone for payment; that defendant is not liable to plaintiff as an undisclosed principal, because Mardis did not assume to act as agent in such transaction, and because, further, Mardis was not authorized as agent to enter into such a contract in his own name; that, in October, 1917, the plaintiff rendered a statement of account to Mardis for an amount then accrued on its contract, being the sum of $1,200, and that the defendant thereupon paid such amount to Mardis, in the belief that the plaintiff was looking to Mardis for payment. The sum total of plaintiff's contract was $2,011, of which amount, the sum of $1,500 has been paid. Defendant pleads also an election by plaintiff to look to Mardis as its debtor, and pleads an estoppel by reason of the defendant's payment to Mardis while the plaintiff was treating Mardis as its debtor.

To put the argument of defendant in a very few words, it contends that, though Mardis was constituted its agent

under its contract, he did not act as such agent in his contract with the plaintiff; that the defendant cannot be held as an undisclosed principal, because Mardis had no authority to represent it as an undisclosed principal, or to enter into contract for defendant in his own name. The briefs on both sides have been devoted largely to the nature and extent of the liability of an undisclosed principal. We may as well assume, preliminary to further discussion, that the defendant would not be liable as an undisclosed principal, unless the contract with the plaintiff was entered into by Mardis pursuant to his contract with the Hospital Association, and unless it was fairly authorized by the defendant, either by the terms of the contract or by the subsequent acceptance of benefits thereunder. There is no question of apparent agency involved. The plaintiff did not enter into the contract in reliance upon any supposed agency, because it knew none. We turn, therefore, to the facts in the record.

The pivotal question of fact is: Did Mardis *intend* to enter into the contract with plaintiff for the benefit of the defendant, and pursuant to his contract with it? If yea, did he exceed his authority by entering into such contract in his own name? We may set forth here sufficient of the contract to throw light upon this question, without assuming to set it out at length:

"This agreement made this 22d day of August, 1914, by and between J. C. Mardis Company, as party of the first part, hereinafter designated the 'contractor,' and the Iowa Congregational Hospital Association of Des Moines, Iowa, second party, hereinafter designated the 'owner,' witnesseth: That in consideration of the mutual agreement herein contained the parties agree with each other as follows:

"First: The contractor agrees that he will construct in the most substantial and workmanlike manner, the following described work, to wit: A 3-story and basement and subbasement, fire-proof hospital building at Fourteenth

and Clark Streets, Des Moines, Iowa. Alternate No. 3 may be accepted by the owner provided he does so within a reasonable length of time. Alternates No. 2, No. 5 and No. 7, are a part of this contract.   *   *   *

"Sixth: The owner hereby appoints the contractor his duly authorized agent for the employment of all labor and purchase of all material necessary for the construction of the work and authorizes the contractor to purchase all said materials for the owner's account. The owner agrees to pay the weekly pay rolls and all material and other bills direct when same have been passed for payment by the contractor, subject to the conditions set forth in Section eleven (11) of this contract.

"Seventh: The contractor shall receive all material and check same as to quality and quantity.   *   *   *

"Eleventh: The contractor agrees that he will not purchase any materials for the owner's account for use in the construction of the work unless, or until, the price and quantity thereof has been approved by the owner. He will furnish the owner a statement of the prices of all materials he proposes to purchase; and if within five (5) days from delivery thereof to the owner, the same shall not have been disapproved in writing by the owner, the price or prices shall be deemed to have been approved. The contractor, however, shall have the right to make small purchases from time to time of materials that shall be required, without submitting the price thereof to the owner, and may purchase same without further authority from the owner; the total, however, of any individual purchase shall not exceed three hundred fifty dollars ($350.00). In case the owner shall disapprove any of the prices submitted by the contractor, the extent of any delay caused thereby shall be added to the time in which this contract is to be completed.   *   *   *

"Twelfth: The contractor agrees to render the owner a weekly statement of all pay rolls and a monthly statement of all expenditures, which the owner agrees to pay to

the contractor within five (5) days after receipt of each statement. * * *

"Fifteenth: Upon final completion and final acceptance by the owner and upon the payment by the owner, to the contractor of the amount then unpaid, and owing to him the contractor agrees to execute and deliver in due form a general release under seal to the owner of all claims, demands and cause of action, of every nature, and to give the owner final and complete receipts and acquittances."

We quote as follows from the contract entered into by Mardis with the plaintiff:

"This agreement made and entered into this 3rd day of April, 1917, by and between J. C. Mardis Company of the first part and Love Brothers, Incorporated, of the second part, witnesseth: That the said Love Brothers, Incorporated, agrees and hereby binds himself to furnish all labor and material necessary to execute and finish complete elevator enclosures and stairs for *Iowa Congregational Hospital* as directed below and according to the drawings and specifications prepared for said work by Proudfoot, Bird & Rawson, architects, for and in consideration of the sum of $2,011.00 for the work done on the aforesaid building. * * *

"It is further agreed by the party of the first part, that in consideration of the faithful performance of this contract by the party of the second part he hereby agrees to pay the said Love Brothers, Incorporated, the aforesaid sum, 85 per cent to be paid as the work progresses, and in accordance with the terms of the original contract between the first party to this contract and the owner of the property. Final payment to be made within 30 days after completion of the work and acceptance of same by the architects."

We have quoted sufficiently from the contract of plaintiff to show that it purported to be entered into pursuant to the contract of Mardis with the Hospital Association.

If there was anything in the contract between Mardis and the Hospital Association which directly required

Mardis to enter into contract for material in the name of his principal, it must be found in the excerpts which we have above quoted. The defendant relies upon Paragraph 11 of such contract, and especially the first sentence thereof. It will be noted therefrom that the contractor was forbidden to "purchase any materials for the owner's account" until price and quantity had been approved by the owner. It is contended that the phrase "for the owner's account" is the equivalent of "in the owner's name." Assuming that such phrase will bear such construction, it is not a necessary construction. The record contains ample evidence of the construction which the parties themselves put upon it. All the contracts for material entered into by Mardis were in writing. A form of contract was used by him, which is referred to in the record as "standard." All the contracts were written upon such blank form, and were, in that respect, uniform. They all purported to be entered into by Mardis as purchaser. Each and all of them were submitted to the building committee of the Hospital Association in advance of their execution, and were approved pursuant to the original contract. The contract with plaintiff is one of such uniform contracts. No question was ever raised as to the propriety of having these contracts made in the name of Mardis. On the contrary, one member of the building committee testified as a witness that they deemed it probable that Mardis could make contracts more beneficial to his principal by making the same in his own name than he could otherwise. The expenditures under these contracts were all reported by Mardis, as required by his contract with the Hospital Association. On October 9, 1917, he reported expenditures under seven of these purchasing contracts. He asked for partial payments on each of them, to a total sum of $5,066. One of these contracts so reported was that of plaintiff, and $1,200 was called for thereunder. The full sum of $5,066 was paid to Mardis by one check. The foregoing is a sufficient indication of the mutual construction which the Hospital Association and Mardis put upon their own

contract, as to whether Mardis was forbidden to make his purchasing contracts in his own name, or whether it was permissible to him to withhold disclosure of his agency and to enter into such contracts in his own name. It is beyond doubt that the committee of the Hospital Association approved that method of contracting by Mardis, and that it was deemed a performance of his duties as agent, under the terms of his contract with the Hospital Association. The payment made by the committee was in strict accord with such contract. The agreement therein was that the "owner agrees to pay to the contractor within five days after the receipt of each statement." Clearly and concededly it was the duty of Mardis to have applied the sum so paid to him upon the respective purchasing contracts. But his duty arose out of his agency, and was a duty he owed to his principal.

It must be said, therefore, that the contract with plaintiff was entered into by Mardis for the benefit of his principal, and that there was no breach of duty or excess of authority on his part in entering into the same in his own name.

If this question were a doubtful one, the Hospital Association is confronted with an insurmountable obstacle to its defense, in that it has knowingly received and still retains the benefit of the performance of this contract thus entered into in its behalf. It cannot plead a want of authority in its agent to enter into the contract, while it retains the fruit of it.

2. PRINCIPAL AND AGENT: retaining benefit and denying authority.

II. There is some dispute in the record as to whether the claim for mechanics' lien was filed within 30 days from the date of the final performance of the contract. The conclusion which we have reached and announced in the foregoing division renders this dispute unimportant. If the contract of plaintiff is to be deemed a contract with the Hospital Association as principal, then, to that extent, the plaintiff was a principal contractor, and not a sub-

3. MECHANICS' LIENS: timely filing.

contractor. If a principal contractor, then concededly its claim was filed in time.

It is also urged that the decree entered in the district court is inconsistent in that personal judgment was entered against both the principal and agent, Mardis. It is true that, ordinarily, if the principal is liable, the agent is not. But this is not necessarily so. It is always in the power of the agent to make himself liable, by a personal undertaking on his part. Whether Mardis did so in this case, we will not inquire. He did not defend, and has not appealed. The question of his liability, therefore, is not before us. The decree entered below must be—*Affirmed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.