Argued June 5; affirmed June 25, 1940

## CAWRSE *v.* SIGNAL OIL COMPANY

(103 P. (2d) 729)

In Banc.

*Leon W. Behrman*, of Portland, and *E. M. Page*, of Salem, for appellant.

*W. C. Winslow* and *William H. Trindle*, both of Salem, for respondent.

BELT, J. This is an action to recover damages resulting from an alleged slander of title to real property owned by the plaintiff. The cause was submitted to a jury and a verdict returned in favor of the plaintiff in the sum of $2,000. From the judgment entered thereon, the defendant appeals.

In view of the defendant's motions for nonsuit and directed verdict, the statement of the facts will be made in the light most favorable to the plaintiff.

Plaintiff is the owner of a quarter-acre of land upon which is located a gasoline service station. The station is on the Pacific highway in Marion county a short distance north of Jefferson. On September 5, 1935, plaintiff's predecessor in title, Alma Peterson, leased the property to the defendant oil company for a period of three years. Under the terms of the lease, the lessor remained in possession and operated the station as the agent of the lessee oil company, selling its products. It was stipulated in the lease that: "This agreement shall be personal to the lessor and shall not be assignable by him without the written consent of the lessee." Alma Peterson, after operating the station for some time, sold the property to L. E. Scrivner who, on April 17, 1937, conveyed it to the plaintiff. None of the deeds of conveyance made any reference to the lease. When plaintiff purchased the property from Scrivner, he inquired from the latter as to whether there was any lease on the premises and was assured there was none. At that time plaintiff

notified the defendant company to remove its "Signal Oil Company" signs from the premises and it did so. Plaintiff desired to deal with the Shell Oil Company and handle its products. He entered into negotiations with the Shell Company but it advised him its products could not be delivered to him because the Signal Oil Company asserted it had a lease on the premises and that "they would have to stay off."

Thereupon plaintiff, on May 8, 1937, wrote to defendant the following letter:

"On April 17, 1937, I purchased the property known as the Midway Service Station from L. E. Scrivner. This station is on Pacific Highway 99-E about three miles north of Jefferson. At the time I bought the property I planned to handle another gas, not that I had anything against Signal, but felt that more business could be done with another. At the time the deal was closed I was told by Mr. Scrivner and the real estate man who handled the deal that there was no contract with you people which would bind me to buy Signal, and I went ahead and bought with this understanding.

"I offered the Shell Company, whom I have dealt with for several years, the business, and their man told me it would be necessary to secure authority from their Portland office before taking the business. Later he told me that they could not deliver as you people had a lease on the property. The Standard Oil salesman from Salem told me today that they had clearance and wanted to paint my gas pumps and deliver a load this afternoon. I am wondering why the Standard Co. say that you are claiming no contracts while the Shell Co. say that you do.

"Please accept this letter as notice that I do not intend to sell Signal Gasoline and that any contract you might claim to have on the station known as the Midway Service Station will not be recognized by me. Your Salem agent promised to take down your signs.

He had all but the sign on top of the building taken down. Will you please have this sign removed?

"Also will you kindly advise me by return mail why you are standing in the way of my handling the brand of gasoline I desire?"

Defendant, under date of May 12, 1937, in response to the above letter, wrote in part as follows:

"In reply to your letter of May 8, wish to inform you that *we do have a lease on the Midway Service Station*, which was executed by Alma Peterson, on the 5th day of September, 1935, for a period of three years, ending September 4, 1938.

"Under the terms of this agreement no other petroleum products are to be sold from the premises described therein, excepting those designated by the Signal Oil Company. This lease is not transferable without the written consent of the Signal Oil Company. If you so desire, we will send you a copy of this lease.

"*We have made no statements to any company other than the fact that we do have a lease on the premises, and we have not forbidden them to sell you petroleum products, nor have we given them permission, as this is not our prerogative.*" (Italics ours.)

Thereupon, plaintiff on May 14, 1937, thus answered:

"On receipt of your letter I asked two attorneys located in Salem, to again check the abstract which I secured when I· purchased the property commonly known as the Midway service station, and I am informed by both of these parties that neither this abstract nor the records in Salem disclose any lease whatever in favor of your company covering this property.

"I have endeavored to obtain gas on numerous occasions from four different companies, and every time I have been refused on the sole grounds that you have claimed to these companies that you hold a lease on this

station on which they would infringe if they delivered gas to me to be sold through this station.

"This letter is directed to you to inform you that these statements and each of them constitute a slander of the title to my property and that I expect to hold you liable in damages for the same."

Plaintiff had a purchaser, one Van M. Greer, who was ready, able and willing to pay $3,500 in cash for the property. Greer testified that he called on the Standard Oil Company, Shell Oil Company and Richfield and "they all three advised me they couldn't service me with gasoline," for the reason that the "Signal Oil Company had a lease on the station." Greer said he was not willing to buy the station unless he could handle gasoline other than that furnished by the Signal Oil Company. Greer eventually refused to purchase the property for the reason above stated.

■ Slander of title is the false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property causing him special damage. The essential elements of plaintiff's cause of action are: (1) The uttering and publication of the slanderous words by defendant; (2) the falsity of the words; (3) malice; and (4) special damages. *Witmer v. Valley National Bank,* 223 Iowa 671, 273 N. W. 370; *Rittenhouse v. Johnson,* 161 Okla. 169, 17 P. (2d) 457; 37 C. J. 130; Odgers on Libel and Slander (6th Ed.) 68; Newell Slander and Libel (4th Ed.) § 167.

Defendant concedes having represented to some of the oil companies that it claimed a lease on the service station in question. The court properly instructed that at such time the defendant did not have a valid and subsisting lease as to the plaintiff. Counsel concede that the defendant company had no valid lease at such

time but contend that "it thought it had one." The covenant concerning services of the lessor was of a personal nature and did not run with the land. The statements made by defendant to third persons relative to plaintiff's title were undoubtedly false. There is evidence tending to show that, as a proximate result of such false statements, the plaintiff lost the sale of his land at a profit.

■ The vital question in the case is whether there is any substantial evidence tending to show that such statements by defendant were made maliciously. Did defendant have any reasonable ground for believing that it had a lease binding on the plaintiff? Or did the defendant make such statement for the purpose of injuring the plaintiff and thereby forcing him to purchase Signal Oil Company products? Plaintiff could not recover if defendant honestly believed it had a valid lease. Malice purports an intention to vex, injure, or annoy another person. *Long v. Rucker,* 166 Mo. App. 572, 149 S. W. 1051; *Cardon v. McConnell,* 120 N. C. 461, 27 S. E. 109; *Fearon v. Fodera,* 169 Cal. 370, 148 P. 200, Ann. Cas. 1916D, 312, and note; *Briggs v. Coykendall,* 57 N. D. 785, 224 N. W. 202; *Bourn v. Beck,* 116 Kan. 231, 226 P. 769; Odgers Libel and Slander (6th Ed.) 72.

■ It was not incumbent upon plaintiff to establish malice by direct evidence. It is sufficient if a reasonable inference of malice may be drawn from the evidence. Of course, if the defendant at the time of making such statement knew it had no lease or had no probable cause for believing it had one, it acted maliciously. Where different reasonable inferences can be drawn from the evidence on such issue, the question is for the jury to decide. In this connection, we ask,

why did the defendant remove its advertising signs from the premises if it honestly believed it had a lease? We think the good faith of the defendant is challenged by the evidence.

■ It is contended by defendant that, since it never represented to Greer that it had a lease, plaintiff cannot recover in this action. Suffice it to say there was publication of the alleged slander of title. It was made to a third person. There is evidence that the false statement concerning plaintiff's title was communicated to the prospective purchaser by the oil company to whom defendant made such representation. Defendant relies upon *Burkett v. Griffith*, 90 Cal. 532, 27 P. 527, 13 L. R. A. 707, 25 Am. St. Rep. 151, but we think that case fails to support its contention. There, Sketchley was the prospective purchaser. The court, in denying relief to the plaintiff therein, said:

"The only special damage which the plaintiff has alleged is that Sketchley was informed of the statements and declarations made by the defendant, and withdrew his offer to purchase, and that the plaintiff thereby sustained damage. It is not alleged that the defendant ever made any statement or declaration to Sketchley, or in his presence, or that he directed or authorized any of his statements to be communicated to him; *nor is it alleged that either of the persons to whom the defendant made such statements related them to Sketchley, or by whom or in what manner Sketchley 'was informed' of the statements.* The only connection between the statements by the defendant and their reaching Sketchley is that the defendant made them for the purpose of circulating the rumor and conveying the impression that the plaintiff had violated the covenants and conditions of his leases. This, however, is too remote to render the defendant liable." (Italics ours.)

There is some substantial evidence tending to establish all the essential elements of the action. We conclude, therefore, that no error was committed in denying motions for nonsuit and directed verdict. The judgment is affirmed.

BEAN and BAILEY, JJ., not sitting.