CONTINENTAL SUPPLY CO., Appellant, *v.* PRICE, et al., Respondents.

No. 9090.
Submitted October 23, 1952.    Decided December 19, 1952.
251 Pac. (2d) 553.

Mr. Selden S. Frisbee, Cut Bank, for appellant.

Messrs. Sias & O'Donnell, Chinook, Messrs. Hall, Alexander & Burton, Great Falls, for respondent.

Mr. Frisbee and Mr. Edward C. Alexander argued orally.

MR. CHIEF JUSTICE ADAIR:

Action by the Continental Supply Company, a corporation, plaintiff, for the foreclosure of an oil and gas lien pursuant to the provisions of Chapter 192, sec. 8375 et seq., Rev. Codes 1935, being R. C. M 1947., secs. 45-1001 to 45-1003.

364

*Complaint.* By complaint in usual form, filed June 18, 1948, in the district court of Blaine county, plaintiff averred: That between September 17, 1947, and February 5, 1948, plaintiff, at the special instance and request of the defendants, D. U. Price, D. U. Price doing business as Price Drilling Co., and C. L. Thompson, furnished and delivered to said defendants certain merchandise, materials and supplies of the reasonable worth and value of $1,395.65, on which sum certain payments had been made and credited, leaving a balance of $1,137.51 due and owing to plaintiff; that said merchandise, materials and supplies were actually used by the defendants D. U. Price, D. U. Price Drilling Co., and C. L. Thompson "in the drilling and operation of a certain oil or gas lease, and well located upon said leasehold hereinafter described which said leasehold is owned, or reputed to be owned by said defendants herein named;" that on May 12, 1948, and within six months after the last merchandise, materials and supplies were furnished, plaintiff filed in the office of the county clerk and recorder of Blaine county, a notice, claim of lien and a duly verified statement of account showing a true account of the amount due plaintiff,—that a copy each of (1) the notice, (2) claim of lien containing a description of the lands and premises against which the lien was filed and against which plaintiff claimed its lien and (3) statement of account, were attached to and made a part of the complaint; that the lands and premises against which said lien was filed and against which the plaintiff claims its lien, are in townships 32 and 33 north, range 24 east of the Montana principal meridian and "are situated in Blaine County, Montana and described as follows, to-wit: * * *

"And particularly the Northwest Quarter of the Northwest Quarter of Section Eleven (11), Township Thirty-two (32) North, Range Twenty-four (24) East.

"And that the above described land is the land covered by the lease and leasehold hereinbefore mentioned."

The complaint further alleged that the defendants Stacey M. Nickerson and William H. Nickerson have or claim some right,

title or interest in or to said oil and gas leasehold and the buildings, appurtenances, fixtures, appliances and materials thereon or used in connection therewith but that such claims are inferior to and subject to the lien of the plaintiff.

*Separate Answer.* The defendant C. L. Thompson, on July 17, 1948, filed a separate answer and cross-complaint. In his answer said defendant admitted that the plaintiff was engaged in selling oil well supplies, materials and equipment "and that on September 17, 1947, this answering defendant was and now is the owner of an interest in the oil and gas leaseholds described in plaintiff's Complaint." The answer then denied that plaintiff furnished any goods, wares, merchandise, materials or supplies at said answering defendant's special instance or request and alleged that such materials, goods, wares and merchandise, "if in fact furnished by plaintiff, were furnished at the special instance and request of D. U. Price, doing business as Price Drilling Company."

*Cross-Complaint.* The defendant C. L. Thompson separately stated and incorporated in his answer a cross-complaint wherein he alleged that during all the times mentioned in plaintiff's complaint he was the owner of an interest in the oil and gas leaseholds described in plaintiff's complaint; that on or about the 7th day of December 1947, the drilling of a test well for the production of oil and/or gas was commenced on a location in the northwest quarter of the northwest quarter of section 11, township 32 north, range 24 east, M. P. M. and "that said well was drilled by the defendant, D. U. Price, to a depth of 4,500 feet under contract, which contract was fully performed by the said D. U. Price and that the said D. U. Price had been paid therefor in full."

In his cross-complaint the defendant C. L. Thompson further alleged that plaintiff had theretofore filed in the office of the clerk and recorder of Blaine county, Montana, a notice and statement of lien against said leaseholds in which he is the owner of an interest; that at the time of filing such notice of lien plaintiff well knew that the merchandise, materials and

supplies, if in fact furnished by the plaintiff, were not furnished at the special instance and request of the defendant and cross-complainant C. L. Thompson, or of the defendants Stacey M. Nickerson or William H. Nickerson, "and that the same were not actually used in the drilling or operating of an oil or gas well located upon any part of the leaseholds described in said notice of lien;" that the said notice of lien, insofar as the same relates to the defendants C. L. Thompson, Stacey M. Nickerson, William H. Nickerson "and the leaseholds described therein, was and is wholly erroneous, false and fraudulent; that by reason of the filing of the said false, erroneous and fraudulent notice of lien by the plaintiff, as aforesaid, the titles of this answering defendant and cross-complainant in and to the said leaseholds described in said notice of lien have become and are clouded; and that by reason thereof this answering defendant has sustained damages in the amount of Two Thousand and no/100 Dollars ($2,000.00), no part of which has been paid and the same is not due and payable to this answering defendant and cross-complainant," for which sum the cross-complainant demanded judgment together with costs and reasonable attorney's fees.

There is no allegation in the cross-complaint that any of the statements in the notice of lien so claimed to be "wholly erroneous, false and fraudulent" were malicious nor is there any allegation that there were any special damages nor any allegation as to how or in what manner the filing by plaintiff of the aforesaid notice of lien, caused or resulted in the loss and damages so claimed and for which the cross-complainant demanded compensation and judgment. Such allegations are required in actions such as this. 33 Am. Jur., Libel & Slander, secs. 350, 356, pp. 314 and 317; Burkett v. Griffith, 90 Cal. 532, 27 Pac. 527, 13 L. R. A. 707, 25 Am. St. Rep. 151; Gordon v. Northern Pac. Ry. Co., 39 Mont. 571, 578, 104 Pac. 679.

*Demurrer to Answer and Cross-Complaint.* The plaintiff demurred to the separate answer of the defendant Thompson on the ground that it does not state facts sufficient to constitute

a defense. Plaintiff also demurred to defendant's cross-complaint on the ground that it does not state facts sufficient to constitute a cause of action against plaintiff.

*Reply and Answer.* Following the overruling of said demurrers the plaintiff filed a reply to the separate answer of the defendant C. L. Thompson and an answer to said defendant's cross-complaint wherein plaintiff admitted that during all the times mentioned, the defendant Thompson was the owner of an interest in the real property described in plaintiff's complaint; denied that it had any knowledge or information sufficient to form a belief as to whether the interest of said Thompson was by virtue of one or more leases or whether said interest constitutes one leasehold or more than one leasehold in the described lands or as to whether the defendant D. U. Price had been paid in full for drilling a test well on said northwest quarter of the northwest quarter of section 11, or as to whether such drilling was commenced at the time alleged and then denied each and every other allegation contained in the separate answer and cross-complaint of the defendant Thompson.

On September 11, 1948, the default of the defendant D. U. Price was entered, he having been regularly served with process and having failed to appear in the action within the time allowed by law therefor. The sheriff was wholly unable to find Stacey M. Nickerson and William H. Nickerson for which reason neither was served with summons nor did they appear in the action.

*Trial.* Being at issue on the aforesaid pleadings the cause was set for trial for Monday, December 11, 1950. On the date so set the default of the plaintiff, for not appearing at the trial, was entered, following which the trial judge made and filed findings of fact and conclusions of law and thereafter gave and entered judgment for the defendant and cross-complainant C. L. Thompson, and against the plaintiff awarding to the former damages plus counsel fees and costs as prayed for in the cross-complaint and in the sum and amounts set forth in the trial court's conclusions of law.

The transcript on appeal sets forth no testimony introduced at the trial of the cause, if any there was, on which the trial court's findings of fact and conclusions of law were based.

*Findings of Fact.* The trial court found that the plaintiff had caused to be filed three statements of materialmen's liens, one being document No. 178,968, filed April 24, 1948, one being document No. 178,967, filed May 12, 1948, but the number and date of the purported third lien, if any there be, was not stated, although there was an amended lien, a copy whereof bearing date of May 11, 1948, was attached to plaintiff's complaint.

The trial court also found that plaintiff's notice and statements sought to impose a lien on certain oil and gas leaseholds covering certain lands specifically described in said lien statements and also that the defendant C. L. Thompson at the time of filing of such liens, owned an interest in oil and gas leaseholds in all the lands described in said lien statements, save and except that he had no interest in the northwest quarter of the northwest quarter of section 11, township 32 north of range 24 east, M. P. M.

The exception so made in the trial court's findings is contrary to the admissions and allegations made by the defendant C. L. Thompson in his answer and cross-complaint.

The trial court further found that the goods, wares, merchandise, materials and supplies, as appearing in said statements of lien were furnished to the defendant D. U. Price at Price's special instance and request and not to the defendant and cross-complainant C. L. Thompson and that same were not used for the drilling of a well upon any part of the land covered by oil and gas leaseholds described in said statements of liens so filed by the plaintiff. Such finding is likewise in conflict with the admissions and allegations made by the defendant C. L. Thompson in his answer and cross-complaint as heretofore shown.

The trial court further found: That in order to protect his interest in said leaseholds, the defendant Thompson employed counsel residing at Chinook; that $250 is a reasonable sum to

be allowed said defendant as and for attorney's fees which fees had not been paid; that the filing by plaintiff of said statements of lien clouded the titles to all the leaseholds described therein and that the defendant Thompson sustained damages thereby which have not been paid.

In its conclusions of law the trial court held that the statements of liens so filed by plaintiff were wholly erroneous, false and fraudulent and that by reason thereof defendant is entitled to a judgment against the plaintiff for the damages sustained by him. In accordance with such finding and conclusions the trial court ordered that the defendant and cross-complainant C. L. Thompson have judgment against the plaintiff for $2,000 damages, for $250 attorney's fees and for $35.40 costs and, on December 12, 1950, such judgment was given and entered.

On December 26, 1950, plaintiff's counsel, who then resided and now resides at Cut Bank in Glacier county, served and filed a motion to set aside both the default and the default judgment so entered against plaintiff.

Counsel for plaintiff also filed an affidavit in support of his motion. In this affidavit counsel stated: That on December 7, 1950, he was advised of the setting of the cause for trial at Chinook; that he awakened to find himself afflicted with a severe throat infection making it impossible for him to talk; that a doctor was immediately summoned; that thereafter he was confined and undergoing constant treatment until after December 11, 1950, his physical condition being such as not to permit him to try the cause on the date set therefor; that on Sunday afternoon, December 10, 1950, affiant, realizing that he would not be able to try the cause on the following day, telephoned the defendant Thompson's attorney at Chinook, and, after informing him of affiant's then physical condition, requested that counsel stipulate for a continuance of the trial of the cause until the regular term to be held in January 1951; that defendant's counsel declined to so stipulate whereupon affiant then informed him that affiant would have to move for a continuance of the case as it was impossible for affiant to

try the cause on December 11, 1950; that defendant's counsel then suggested over the long-distance telephone that the case might be settled for $350 without the necessity of a trial; that affiant then asked if it would not be possible to settle for $250 and defendant's counsel replied that it would not be possible as he could prove damages in the amount of $350; that no definite agreement for a settlement was reached in this telephone conversation between affiant at Cut Bank and defendant's counsel at Chinook and that affiant, after considering the advisability of filing a motion for continuance and the desirability of putting an end to the litigation, on the afternoon of December 10, 1950, decided to mail to defendant's attorney at Chinook a check for $350 and that affiant did so mail him a check in said amount; that affiant mailed such check in good faith; that he believed and still believes he was thereby accepting said offer of $350; that affiant was never advised that said offer had been withdrawn but that if said offer had been withdrawn it still would have been impossible for him to have attended on the court or 'tried the case on December 11, 1950, because of his throat infection and impaired physical condition and that affiant was so advised by his physician Dr. S. D. Whetstone, of Cut Bank; that when it became apparent to affiant that he would not be able to try the case it was then too late to obtain another attorney who could adequately represent plaintiff in the trial; that affiant had consulted with the plaintiff and believes that plaintiff had a good and meritorious defense against the cross-complaint of the defendant Thompson; that said oil and gas lien was filed in good faith and without any malice; that plaintiff's action was commenced in good faith to recover the price of materials furnished as alleged in said complaint; that subsequent to the commencement of plaintiff's action the defendant D. U. Price paid the amounts claimed and prayed for in plaintiff's complaint; that upon such payment in full of the account the only cause of action thereafter existing between plaintiff and the defendant Thompson was on the cross-complaint of said Thompson; that plaintiff had filed his said lien

in good faith and that such lien was not false nor was there any fraud exercised by plaintiff in the filing of the lien.

In his affidavit plaintiff's counsel further stated that subsequent to the filing of said lien, the plaintiff was never notified that he had filed a lien which clouded the title of the cross-complainant Thompson, nor was any demand or request ever made by the cross-complainant for the release of such lien; that there was no drilling contract between D. U. Price and the cross-complainant Thompson ever filed of record; that in the purchasing of said materials the defendant D. U. Price at all times was acting as the agent or servant of the cross-complainant Thompson; that said lien was filed for money due and owing to the plaintiff as was and is evidenced by the payment of said account by the defendant D. U. Price following the commencement of this suit; that the lands described in the lien were described therein by the plaintiff on the honest belief that said lands were the lands upon which the well or wells were drilled for which plaintiff had supplied the materials described in the lien and that the description of said lands was obtained through correspondence with the county clerk and recorder of Blaine county, Montana, and the Blaine County Abstract Company.

In support of his motion to set aside said default plaintiff's counsel also filed the affidavit of Dr. S. D. Whetstone of Cut Bank, which corroborates counsel's affidavit as to his then physical condition. Dr. Whetstone's affidavit stated that plaintiff's counsel was ''suffering from an acute respiratory infection * * * and in my opinion it was not advisable, if not impossible, for him to participate in the conduct of a trial or law suit on Monday, December 11, 1950.''

In opposition to plaintiff's motion to set aside the default and the supporting affidavits above mentioned, counsel for the cross-complainant Thompson, on January 23, 1951, made and filed an affidavit in which he admitted he had received a telephone call from plaintiff's attorney on Sunday, December 10, 1950, in which the latter inquired if affiant would ascertain

if the trial of said action previously set for December 11, 1950, would be had on said date; that affiant advised plaintiff's counsel that affiant believed it would be; that plaintiff's counsel then said he had been ill and that it would be inconvenient for him to be in attendance on the date set for the trial and requested a stipulation for a continuance; that affiant explained his reasons for declining to so stipulate for a continuance, namely, that his client, the cross-complainant Thompson, was then in Blaine county, but does considerable traveling around the country and spends a great part of his time in New Orleans; that Thompson had remained in Blaine county for several weeks awaiting the trial and that it would be uncertain when he would be able to attend court here in the future without incurring great expense; that the case had been previously continued at the request of counsel for the plaintiff and that affiant's client intended to leave shortly for an extended vacation; that affiant then stated to plaintiff's counsel that if he filed a motion for a continuance affiant would oppose it and suggested he had better be on hand to try the same on the date set.

The above affidavit stated that plaintiff's counsel had represented that he had an associate in his office who could try the case but that he did not wish to do so and that it would be difficult for him to appear personally; that plaintiff's counsel then offered to settle the case for the sum of $250; that affiant refused to accept such offer and informed plaintiff's counsel that cross-complainant could establish damages in excess of the amount asked for in his complaint; that considerable time had elapsed since the filing of the action and cross-complaint; that a lot of water had passed under the bridge since that time; that his client's temper had somewhat cooled and "that he felt safe in saying that the sum of Three Hundred Fifty dollars would be accepted as a settlement;" that plaintiff's counsel said nothing and hung up the telephone; that had counsel expressed a willingness to settle for that amount affiant could not have accepted it without the approval of his client, which

approval affiant had in mind obtaining over the telephone from his client who was then in Harlem, Montana, and that affiant received a check for $350 by mail from plaintiff's counsel on the afternoon of December 11, 1950, enclosed in a properly stamped and addressed envelope and postmarked at Cut Bank, Montana, on December 10, 1950.

On January 23, 1951, the court heard and denied plaintiff's motion to set aside its default and reopen the case and on March 22, 1951, plaintiff appealed to this court.

As shown above the defendant Thompson in his answer admitted and in his cross-complaint, affirmatively alleged that at all the times involved he "was and now is the owner of an interest in the oil and gas leaseholds described in plaintiff's Complaint." Plaintiff's complaint after describing various lands in Townships 32 and 33 north, then concludes: "and particularly the Northwest Quarter of the Northwest Quarter of Section Eleven (11), Township Thirty-two (32) North, Range Twenty-four (24) East."

These admissions and allegations are in direct conflict with the court's findings to the effect that the defendant Thompson had no interest in the above last particularly described forty-acre tract.

Under R. C. M. 1947, sec. 45-1001, plaintiff would be entitled to a lien for supplies and materials furnished for drilling performed at the request of the owner of the land or leasehold or at the request of his "trustee or agent" who performed the drilling for the owner or leaseholder. The affidavit of plaintiff's counsel filed in support of plaintiff's motion to set aside plaintiff's default states that at all times the defendant D. U. Price was the agent or servant of the answering defendant Thompson in the purchasing of such materials and supplies.

In Blose v. Havre Oil & Gas Co., 96 Mont. 450, 460, 31 Pac. (2d) 738, 741, this court in construing section 45-1001, supra, said: "While under the foregoing statute, and kindred statutes, the labor must be performed under a contract, express or implied, the contract may be with the owner, his agent or

trustee. Love Bros. v. Mardis, 189 Iowa 350, 176 N. W. 616; Lane v. Lane Potter Lumber Co., above [40 Mont. 541, 107 Pac. 898]."

By his cross-complaint Thompson apparently seeks to recover damages for "slander of title" to his leasehold interests or ownership in the land described in plaintiff's lien and complaint. In 53 C. J. S., Libel and Slander, sec. 269, p. 391, "slander of title" is defined as "a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, or of some right of his, causing him special damage." Also see secs. 270-274, pp. 391-394.

In section 273, supra, it is said: "The falsity of the words published is a necessary element to maintain an action for slander of title." Again in section 274 it is said: "Malice is a necessary ingredient in order to entitle plaintiff to recover for slander of title. Indeed it has been said that malice is the gist of the action."

In Fearon v. Fodera, 169 Cal. 370, 380, 148 Pac. 200, 203, Ann. Cas. 1916D, 312, it is said: "In other words, malice, express or implied, in the making of slanderous statements, is an essential ingredient of a cause of action for damages for slander of title, without proof of which such action must fail."

In Keiser v. Kile, 166 Okl. 41, 26 Pac. (2d) 194, 195, it is said: "The principal element in a suit for slander of title is malice. There must have been some malicious intent upon the part of defendant at the time of doing the act complained of to constitute malice." See also Cawrse v. Signal Oil Co., 164 Or. 666, 103 Pac. (2d) 729, 129 A. L. R. 174, with note; 33 Am. Jur., Libel & Slander, p. 313, sec. 348, p. 317, sec. 356, p. 318, sec. 358.

In the case at bar it stands undisputed that the plaintiff did furnish supplies and materials to the defendant Price, at his request to drill oil wells on land upon which defendant Thompson then had a leasehold interest and that Price did drill at least one well thereon to a depth of 4,500 feet which well would of course require considerable materials and supplies; that at the time he commenced this suit plaintiff had not been paid a large

balance due and owing for the materials which he had supplied and that it was not until after suit had been brought that D. U. Price paid plaintiff the balance being in the sum and amount demanded in plaintiff's complaint.

Upon the furnishing of such materials and supplies, plaintiff, under the express provisions of R. C. M. 1947, sec. 45-1001 to 45-1003, became entitled to file a lien within six months if he had not been paid for the material and supplies so sold and delivered.

There is nothing in Thompson's cross-complaint or any of the other papers including the record on appeal to show that in filing its lien the plaintiff was acting with malice.

The affidavits, testimony and showing made in support of plaintiff's motion to set aside the default, fully meet the requirements of R. C. M. 1947, sec. 93-3905, and sufficiently establish a case of excusable neglect in the failure of plaintiff's counsel to attend on the trial court on December 11, 1950. It is the policy of the law to have every case tried on its merits. Judgments by default are not favored. Patterson v. Patterson, 120 Mont. 127, 179 Pac. (2d) 536, 537; Nelson v. Lennon, 122 Mont. 506, 508, 206 Pac. (2d) 556.

It was error for the trial court to: (1) Overrule plaintiff's demurrer to the cross-complaint; (2) to make and enter judgment for the cross-complainant, and (3) to deny plaintiff's motion to set aside and vacate the default and the default judgment so given and entered against it. Accordingly the judgment is reversed and the cause is remanded to the district court for further proceedings in conformity with this opinion and with directions: (1) To vacate the order disallowing the demurrer to the cross-complaint; (2) to sustain such demurrer, and (3) to allow the cross-complainant a reasonable time within which to file an amended cross-complaint, if he so elects.

It is so ordered.

MR. JUSTICE FREEBOURN concurs.

MR. JUSTICE BOTTOMLY (specially concurring).

I concur in the result, but not in all that is said in the opinion. In my opinion the pleadings of the defendant in this proceeding sufficiently set forth facts relative to the acts on the part of the plaintiff from which malice may be implied.

The cross-complaint of defendant alleged, inter alia, that the plaintiff at the time of filing the notice of lien well knew that the goods, wares, merchandise, materials and supplies, if in fact furnished by plaintiff, were not furnished at the special instance and request of defendant and cross-complainant C. L. Thompson; that the said notice of lien, insofar as the same relates to defendant and cross-complainant C. L. Thompson, and the leaseholds described therein, was and is wholly erroneous, false and fraudulent.

From the pleadings it appears affirmatively that the plaintiff in disregard of defendant's rights knowingly, recklessly, erroneously, fraudulently and wrongfully filed a blanket lien upon many legal subdivisions of real property, in which defendant held leasehold interests, all of which would demonstrate a willingness on the part of the plaintiff to cloud and disparage the title of defendant and the will to vex, annoy and harass and injure the defendant.

Where, as here, no justifiable motive is shown in the record, malice is presumed. R. C. M. 1947, sec. 19-103, subd. 18, and sec. 94-2803; 53 C. J. S., Libel & Slander, p. 392, sec. 270, note 50; 3 Restatement, Torts, secs. 624-630, pp. 325-343; Gudger v. Manton, 21 Cal. (2d) 537, 134 Pac. (2d) 217, 221.

ASSOCIATE JUSTICES METCALF and ANGSTMAN, concur in the foregoing specially concurring opinion of MR. JUSTICE BOTTOMLY.