JACOB H. HENTZY, ALSO KNOWN AS JAKE HENTZY, PLAINTIFF AND RESPONDENT, v. MANDAN LOAN & INVESTMENT CO., A CORPORATION, ET AL., AND G. W. FILLNER ET UX., DEFENDANTS AND APPELLANTS.

No. 9331.

Submitted March 17, 1955.    Decided July 27, 1955.

286 Pac. (2d) 325.

Russell K. Fillner, County Atty., H. G. Young, Forsyth, for appellant.

Milton G. Anderson, Sidney, D. C. Warren, Glendive, for respondent.

Mr. Fillner, Mr. Young and Mr Anderson argued orally.

MR. JUSTICE ANGSTMAN:

This action was commenced on April 8, 1952, to quiet title to sections 6 and 8 in Township 20, North, Range 51, situated in Dawson County.

Defendant George W. Fillner filed an answer in which he alleges in substance that he is the owner of the south half of section 6. The reply put in issue the allegations of the answer. Upon leave of court the plaintiff was permitted to file an amended reply in which he asserted the doctrine of laches and adverse possession, together with the fact that plaintiff has paid all the taxes and assessments levied and assessed upon the lands since the year 1944.

The cause was tried to the court sitting without a jury and the court made findings of fact and conclusions of law in favor of the plaintiff and against the defendants. The answering defendants George W. Fillner and his wife, Verna Fillner, have appealed from the judgment.

So far as material here the substance of the court's findings is as follows: that the defendant Verna Fillner is the wife of George Fillner and her only interest in the property is that of her inchoate right of dower; that defendant George Fillner acquired title to the south half of section 6 by a United States patent on the 25th day of January, 1919; that the taxes for the years 1923 to 1929 became delinquent and unpaid; that

Dawson County gave notice by registered mail to George W. Fillner of application for a tax deed.

That on the 9th day of December, 1930, the clerk and recorder filed an affidavit showing the manner in which the notice had been given to the effect that the deed would be applied for December 30, 1930; that on the 30th day of December, 1930, the county treasurer of Dawson County executed and delivered a tax deed to Dawson County for the south half of section 6, which deed was duly recorded; that for the years 1930 to 1941 the south half of section 6 was not assessed to anyone because the record title thereto stood in the name of the county; that from the year 1938 until the year 1942 the land was leased to Daniel Killen and his partner Fred W. Woolsey, and was used for grazing purposes in the manner customary in that territory at that time.

That on the 9th day of February, 1942, Dawson County entered into a written contract with Daniel Killen for the sale of section 6 to him, which contract was filed in the office of the county clerk and recorder of Dawson County February 9, 1942; that on the 12th day of November, 1943, Dawson County executed and delivered to Daniel Killen a quitclaim deed to section 6, reserving to Dawson County six and one-fourth per cent of all oil, gas and minerals recovered and saved from the land, which deed was recorded November 12, 1943.

That on March 28, 1944, Daniel Killen executed and delivered to plaintiff, Jacob Hentzy, a quitclaim deed to section 6, which was duly recorded on March 28, 1944; that Hentzy, by and through his predecessors in interest, entered into the possession and control of all of section 6 in 1938; that ever since that time plaintiff and his predecessors in interest have continuously used, possessed and controlled the land for the purposes of husbandry and pasturage and for the purpose of making improvements thereon and for the purposes for which the lands were best adapted and in the manner in which the lands in that particular community were used; that the plaintiff and his predecessors in interest built and maintained fences on the

premises involved, and that the possession of plaintiff and his predecessors in interest was actual, visible, exclusive and continuous for more than the statutory period; that the plaintiff and his predecessors in interest have paid all taxes levied on the land from the year 1942 to the date of trial.

From these findings the court concluded that the plaintiff acquired title to the land by adverse possession, and that the defendants have no right, title, claim or interest in the land. The court likewise found in accordance with the mutual agreement of all parties that the tax deed issued to Dawson County for the south half of section 6 is void. Judgment was entered decreeing plaintiff the owner of the property, but saving to Dawson County six and one-quarter per cent of all the oil and gas and other mineral produced and saved from the land pursuant to the agreement of the parties.

The determinative question involved on the appeal is whether, under the undisputed facts in the case, the claim of adverse possession as to the south half of section 6 is good under our statutes. R. C. M. 1947, section 93-2508, provides in part as follows: "When it appears that the occupant, or those under whom he claims, entered into the possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, * * * and that there has been a continued occupation and possession of the property included in such instrument * * * under such claim, for ten years, the property so included is deemed to have been held adversely * * *."

And under R. C. M. 1947, section 93-2509, it is provided in part that land is deemed to have been possessed and occupied in the following cases: "1. Where it has been usually cultivated or improved. 2. Where it has been protected by a substantial inclosure. 3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber, either for the purpose of husbandry, or for pasturage, or for the ordinary use of the occupant."

R.C.M. 1947, section 93-2513, provides in substance that adverse possession shall not be considered established unless the party claiming shall have paid the taxes legally levied and assessed on the land.

Appellants contend that the possession under a contract for ▮ a deed is not under color of title within the meaning of R. C. M. 1947, section 93-2508 since it provides that the adverse possession must be founded upon a claim upon a written instrument, "as being a conveyance of the property in question." The difficulty with that contention is that here the instrument in writing upon which adverse possession was founded is a tax deed running to the county and hence is a written instrument which purports to be a conveyance of the property. The possession taken by the tenant and vendee of the county was under the law possession by the county under its tax title. Sullivan v. Neel, 105 Mont. 253, 73 Pac. (2d) 206.

This court has held that a tax deed though void is ample as ▮ color of title so as to sustain the claim of adverse possession. See Morrison v. Linn, 50 Mont. 396, 147 Pac. 166; Horsky v. MeKennan, 53 Mont. 50, 162 Pac. 376. To the same effect by necessary inference is the case of Fitschen Brothers Com. Co. v. Noyes' Estate, 76 Mont. 175, 246 Pac. 773; and Pritchard Petroleum Co. v. Farmers Co-op. Oil & Sup. Co., 121 Mont. 1, 190 Pac. (2d) 55.

Here it was shown that after the county obtained the tax deed ▮▮ it leased the land in 1938 to predecessors in interest of the plaintiff. The county then entered into a contract for the sale of the land in February 1942 to Daniel Killen, and later and in 1943 deeded the property to him by quitclaim deed. He in turn in 1944 gave a quitclaim deed to plaintiff. Thus it is shown that the County of Dawson had color of title to the land in question from December 30, 1930, the date it received the tax deed, until in 1943 when the county deeded the property to Daniel Killen. Furthermore, contrary to the contention of appellants, the rule is that color of title may be evidenced by a contract for the sale of land. 1 Am. Jur., Adverse Pos-

session, section 196, page 901; 2 C. J. S., Adverse Possession, section 130 b, page 688. An instrument which purports to convey the land or the right to its possession is sufficient color of title as a basis for adverse possession if the claim is made in good faith. Fitschen Brothers Com. Co. v. Noyes' Estate, supra, and Sullivan v. Neel, supra.

In reliance on a statement in 2 C. J. S., Adverse Possession, section 72, page 606, defendants contend that possession under a void tax deed is of no avail to the possessor during the time when title is in the government. The author cites the case of Wright v. Louisville & N. R. Co., 203 Ala. 118, 82 So. 132, in support of the text. Neither the text nor the Wright case has application here. The government is not involved in this case. It is not sought here to show adverse possession against the government. Here it is sought to show the county's adverse possession, through its tenant and vendee under a lease and contract of sale, against the original owner, the defendant George Fillner.

Appellants contend that the evidence does not show open, actual, exclusive, hostile and notorious possession of the land for the ten-year period. They concede that there was sufficient possession to sustain a claim of adverse possession since 1944, the time when plaintiff acquired title to the land. Their contention is that the possession prior to the year 1944 was not sufficiently established. We have carefully considered the evidence in the case and find there is ample evidence in the record sustaining the finding of the trial court on the subject of adverse possession for the statutory period.

The evidence bearing upon the question of possession before 1942 shows that Daniel Killen and Fred W. Woolsey, two sheepmen from Miles City, leased the lands from Dawson County on a yearly cash basis. The lease also covered section 8. They operated a sheep business together and ranged the sheep under the care of a sheepherder upon the lands here involved as well as other land in the summer time, but wintered the sheep in the valley on sugar beet tops and alfalfa hay. The sheep were at

all times kept under control by the use of the herder, a camp tender and sheep dogs. The herder and the dogs kept other straying livestock off the premises in the summer time in order to save the grass and water for the sheep. No one attempted to assert title to the land at any time during the occupancy by Killen and Woolsey. Killen entered into a contract with Dawson County to purchase section 6, and about the same time Woolsey entered into a contract to buy section 8. Each thereafter acquired a quitclaim deed from the county.

After their purchase on the contracts of sale from Dawson County, they commenced paying the taxes on the property. After the contract to purchase was made to Killen, the land here involved was used in the general and customary manner for grazing sheep in the area. While Mr. Woolsey testified on cross-examination that he was not sure that he could pick out section 6 at the time he and Killen were running sheep, yet he said: "There would be no occasion for me to have to pick it out, I had a man representing me and he looked after the business. Q. The man on the field knew the facts and you relied on him? A. That is right, he and I were partners."

Plaintiff also testified that he has lived in the vicinity of the lands for many years and that Killen and Woolsey grazed the lands with sheep in the forties prior to the time he bought it and that the sheep were herded in the usual manner. There is ample evidence showing that the land was used for the ordinary use of the occupants within the meaning of subdivision 3 of section 93-2509, for more than the statutory period of 10 years before this action was commenced. See Sullivan v. Neel, supra.

Other contentions of appellants have been considered, but we find no reversible error in the record.

Finding ample evidence in the record to sustain the trial court's findings and conclusions, the judgment appealed from is affirmed.

MR. JUSTICES ANDERSON, DAVIS, and BOTTOMLY, concur.

MR. CHIEF JUSTICE ADAIR, dissents.