No. 12841

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

JUMPING RAINBOW RANCH, a
Montana Corporation,

Plaintiff and Respondent,

-vs-

RICHARD J. CONKLIN et al.,

Defendants and Appellants.

---

Appeal from: District Court of the Sixth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellants:

Berg, Angel, Andriolo & Morgan, Bozeman, Montana
Charles F. Angel argued, Bozeman, Montana

For Respondent:

Landoe & Gary, Bozeman, Montana
Joseph B. Gary argued, Bozeman, Montana
Huppert and Swindlehurst, Livingston, Montana
James Murad, San Francisco, California

---

Submitted: June 13, 1975

Decided: JUL 3 0 1975

Filed:

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment entered in the district court, Park County, pursuant to findings of fact and conclusions of law finding that plaintiff Jumping Rainbow Ranch is the owner of certain lands; that the quit claim deed filed by defendants Richard J. Conklin and wife and John Orser and wife constituted a cloud on plaintiff's title; and, that actions in obtaining and recording the quitclaim deed were reckless, erroneous, fraudulent and wrongful, causing plaintiff to suffer damages in the amount of $5,000.

The litigation involved a dispute as to the ownership of certain lands in Section 35, Township 3 South, Range 9 East, M.P.M., Park County, Montana. Plaintiff is a Montana corporation whose sole owners are Paul McAdam and his wife. In 1966, Paul McAdam purchased certain real property from Elard and Mildred Basset. McAdam and his wife transferred this property to plaintiff corporation on April 21, 1972. A plat from the records of the Bureau of Land Management shows that Lots 5 and 6 in Section 35 lie totally within the northeast quarter of that section and contain 25.12 acres and 37.84 acres respectively.

The quitclaim deed filed by defendants is dated April 5, 1971, and was filed on May 3, 1971. That deed, except for one of two islands described therein, covers some of the property in the northeast quarter of Section 35. This dispute arose over the 17.9 acres and the two islands.

The quitclaim deed dated April 5, 1971, came from one D. G. Anderson Duncan and covered portions of the plaintiff's properties, and it is by this deed that defendants claim title.

From the testimony at trial and the depositions taken and introduced at trial, the history of the deed is revealed. Counsel for plaintiff describes it in his brief:

"The source of Conklin's title to Lots 5 and 6
of Section 35, Township 3 South, Range 9 East,
lies deep in the annals of western folklore. It
seems that according to Conklin, an attorney of
sixteen (16) years' experience, an Anderson
passed through the Yellowstone Valley during
the 1800's. It was from this Anderson that
Conklin feels he derived merchantable title.
After discovering that his secretary's maiden
name was Anderson, Conklin asked Mrs. Duncan to
quitclaim any interest she might of had in Lots
5 and 6 in the Northeast Quarter of Section 35,
Township 3 South, Range 9 East. The full con-
sideration for signing her name to the deed was
Ten Dollars ($10.00) and a box of Russell Stover
chocolates."

Conklin admitted that he never had Lots 5 and 6 surveyed; he

never purchased title insurance nor did he ever study the abstract

of title to determine if any Andersons showed in the chain of

title. He testified he had checked the records of the Bureau of

Land Management in Billings, Montana and the original survey showed

that lots 5 and 6 had a boundary perimeter on the west side thereof

and a straight north-south survey line and that all property lying

west of the straight north-south survey line had never been patented.

At trial plaintiff's exhibit 5 was a copy of the official

survey of the lands in question on file at the Bureau of Land

Management office, dated June 25, 1888, and showed that Section

25 and in particular Lots 5 and 6 thereof, had a western boundary

along the right bank of the Yellowstone River. Affixed to exhibit

5, and made a part thereof, is a photographic blow-up of the prop-

erty in question, Lots 5 and 6, with an overlay prepared to scale.

The exhibit indicates the west boundaries of Lots 5 and 6 were

not straight lines, but the right bank of the Yellowstone River, or

geographically speaking, the east bank of the Yellowstone River.

Plaintiff's exhibit 6, a 1951 United States Geological

Survey, indicates there has been an accretion to lands in Lots 5

and 6 since the survey of 1874, as shown on the June 25, 1888 plat.

The trial court found that all the accreted lands have been ex-

clusively and open and notoriously owned by plaintiff and its

predecessors in interest for more than five years preceding

the commencement of this action; that plaintiff purchased the

land in 1966 and immediately improved it by diking and other

extensive improvements commencing in 1967, in the way of fish

ponds for cultivating fish.

The complaint here was filed on March 29, 1972. On

April 20, 1972, plaintiff obtained a quitclaim deed from Allyn

and Agnes O'Hair,

W. O'Hair,/his wife, covering:

> "All land lying East of the middle of the Yellow-
> stone River in Section thirty-five (35), Township
> three (3) South, Range Nine (9) East, M.P.M., an
> more particularly any portion of Lots One (1) and
> Two (2) of said Section thirty-five (35) that lies
> East of the middle of the Yellowstone River in
> said Section thirty-five (35)".

This deed was filed July 21, 1972. An amended complaint was

filed on July 20, 1972.

Conklin deeded his interest to a Mr. and Mrs. John Orser.

Orser testified by deposition that he paid Conklin between $1,000

and $5,000 for legal services, but refused to tie his testimony

to the purchase of the land. Orser conveyed to a Cal Rossi of

San Francisco. Rossi, according to Orser, was to pay him $1,000

per acre, when he got clear title, but had paid nothing down.

Conklin, at the time of submission of his brief, alleged

he no longer claimed interest in the land and the court's find-

ings of a slander of title was erroneous because there was no

substantial evidence in the record to show his conduct was malicious.

Conklin raises eight issues on appeal. We find those

issues may be combined into 2 issues:

(1) Is there sufficient evidence for the court to find

that all the lands east of the Yellowstone River, particularly

Lots 5 and 6, Section 35, Township 3 South, Range 9 East, M.P.M.

belonging to Jumping Rainbow Ranch, Inc.?

(2) Would the actions of Conklin in filing the deed result

- 4 -

in substantial damage to plaintiff, Jumping Rainbow Ranch, Inc.?

The action of Conklin, a licensed attorney of this state for some sixteen years, was an attempt to deprive plaintiff of certain real estate. Conklin insists now that he does not now own the land nor claim any interest in it. His argument that he raises the question of ownership only as to its effect on the monetary judgment against him, is difficult to understand.

Prior to judgment, and at the taking of his deposition, he stated:

"A. No, sir, I am claiming a fee interest in this land. Title of record---."

Thereafter, he deeded it to Orser who deeded it to Rossi, who was to get $17,000 if he and Conklin could clear the title.

In Diamond Investment Co. v. Geagan, 154 Mont. 122, 460 P.2d 760, this Court held that a defendant in a quiet title action must rely on strength of his own title and not weakness of plaintiff's title. Roe v. Newman, 162 Mont. 135, 509 P.2d 844; Brown v. Cartwright, 163 Mont. 139, 515 P.2d 684.

Conklin's attempt to establish title through a quitclaim deed by his secretary whose maiden name was Anderson is, of itself, the weakest interest of title to qualify to claim any interest in the land. Perhaps, because of lack of strength of his own title, defendant goes on in great lengths to prove the land does not belong to plaintiff. Such diversionary arguments lend no strength to his claim of title.

Damages to plaintiff were brought about by Conklin's claim of interest in the land, for it was his prior actions that necessitated the filing of this action to clear title at a time he alleged an interest. Therefore, the source of his claimed interest and his acts are relevant to an adjudication of the matter.

Conklin, as an attorney, knew or should have known, the standard procedure for proving title to land. This record is barren

of such proof.

Plaintiff admitted the present acreage of Lots 5 and 6 is greater than the acreage existing at the time of the original survey, but showed that the increase was caused by accretion by the Yellowstone River, not by an error of survey. This Court in Smith v. Whitney, 105 Mont. 523, 74 P.2d 450, a case arising along the Yellowstone River in Custer County, found that accreted lands belong to the riparian owner. Helland v. Custer County, 127 Mont. 23, 256 P.2d 1085. In Smith some 184 acres had accreted during a period of 60 years. Here, the evidence shows some 17 acres seem to have accreted in 80 years, and we have no difficulty agreeing with the trial court's finding in this matter.

On the issue of damages, the record shows through the testimony of Paul McAdam that the plaintiff suffered considerable damage as a result of Conklin's filing his quitclaim deed. Substantial improvements had been made on the land in question. A dragline had dug out a swamp to make fishponds for raising trout. Dikes had been placed along the shoreline, approximately 20 feet back from the river. Further expansion of ponds on Lots 5 and 6 had to be curtailed. McAdam testified he suffered in lost profits, at least $4,000.

The trial court found plaintiff damaged in the amount of $4,000. The additional $1,000 was assessed by the trial court because of Conklin's and Orser's malicious conduct resulting in the slander of title.

This Court in Continental Supply Co. v. Price, 126 Mont. 363, 374, 376, 251 P.2d 553, recognized that in view of the pleadings and record, malice as an essential element of the cross-complaint for slander of title could be presumed. In Continental the Court cited Keiser v. Kile, 166 Okl. 41, 26 P.2d 194, 195, with approval: "The principal element in a suit for slander of

title is malice." and then noted:

> "From the pleadings it appears affirmatively that the plaintiff in disregard of defendant's rights knowingly, recklessly, erroneously, fraudulently and wrongfully filed a blanket lien upon many legal subdivisions of real property, in which defendant held leasehold interests, all of which would demonstrate a willingness on the part of the plaintiff to cloud and disparage the title of defendant and the will to vex, annoy and harass and injure the defendant.
>
> "Where, as here, no justifiable motive is shown in the record, malice is presumed. [Citing cases and authority]"

See: Vol. 20, Montana Law Review, 1, 18: Paulson v. Kustom Enterprises, Inc., 157 Mont. 188, 483 P.2d 708.

Here, the record clearly shows the action of Conklin in filing his quitclaim deed was such as to warrant the necessary showing of malice to entitle plaintiff to punitive damages.

The findings of fact, conclusions of law, and judgment of the trial court are affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices