No. 14664

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

------------------

JOSEPH RUSSELL REALTY COMPANY,
A Montana Corporation,

Plaintiff and Respondent,

-vs-

THOMAS F. KENNEALLY and MARY ANN KENNEALLY,
husband and wife,

Defendants and Appellants.

------------------

Appeal from:  District Court of the Second Judicial District,
              Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

        For Appellant:

              William N. Geagan and D. L. Holland, Butte,
              Montana

        For Respondent:

              Bolinger and Wellcome, Bozeman, Montana

------------------

                            Submitted on Briefs: September 19, 1979

                                    Decided: JAN 16 1980

Filed: JAN 16 1980

_____
                                    Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendants, Thomas and Mary Ann Kenneally, appeal from a judgment in Silver Bow County District Court which quieted title to a tract of land in plaintiff, Joseph Russell Realty, Inc. Russell Realty cross-appeals, arguing it is entitled to damages for slander of title and attorney fees.

Both parties assert title to real property which is part of what is commonly called the Valley Addition in or near Butte, Montana.

From the abstract of title, it appears the property in dispute was owned by John and Mary Stewart in 1891. Russell Realty bases its title on a quitclaim deed executed in 1925 by the Stewarts. The deed conveyed to Russell Realty all the Stewart's

> " . . . right, title and interest in and to the
> VALLEY ADDITION to the City of Butte, Montana,
> according to the official plat and survey of the
> said Addition now on file and of record in the
> office of the County Clerk and Recorder of said
> Silver Bow County, State of Montana, to which
> plat for a further and particular description,
> reference is hereby made."

The land was considered worthless and was not taxed from 1915 to 1968.

Thomas Kenneally, who at all pertinent times acted on behalf of himself and his wife, became interested in the property in 1964. Discovering no taxes had been paid on the property, Kenneally contacted his attorney, William Geagan of Butte and discussed different manners of obtaining the land. After reviewing records in the offices of the county treasurer and the county assessor in hopes of finding out who the owner of the land was, it was determined the "property was in limbo." Geagan then advised Kenneally to secure

> " . . . a Deed, a Quit Claim Deed, from any person
> that would convey any right, title, and interest
> that that person might have, not granting it but
> merely quit claiming any right, title, and interest
> to the property.

> "And then to improve the property and pay the
> taxes and have it assessed, and pay the taxes
> for five years, and <u>it would ripen into a good
> title, adverse title</u>." (Emphasis supplied.)

Kenneally testified that Geagan suggested he find a person named Joseph Russell to execute the quitclaim. Geagan denied this, claiming he had no knowledge that Russell Realty appeared in the chain of title and that he did not so advise Kenneally. In any event, one Joseph Russell, a customer at Kenneally's Butte gas station, agreed to execute a quitclaim of all his right in the property to Kenneally. Kenneally, with the knowledge that this Joseph Russell had no interest whatsoever in the property, asked attorney Geagan, to prepare a quitclaim naming Joseph Russell as the party releasing his title and himself and his wife as the parties obtaining title. Geagan, also with the knowledge that Joseph Russell had no title at all to the property, drew up the deed. In return for five gallons of gasoline, Joseph Russell, who also knew he had no right to the property, executed the quit-claim deed in April, 1967. The deed was recorded and the property was entered on the tax roll of Silver Bow County. Taxes were paid for the years 1968-1977 by Kenneally.

In 1970, Kenneally transferred the property to Mrs. Mary Margaret Baker, his mother-in-law. A quiet title action was filed in her name by attorney Geagan. In conjunction with that action, an abstract of title was prepared which named both Joseph Russell, the admitted stranger to title, and Joseph Russell Realty, the plaintiff in this action, as parties with potential interests in the land. Geagan testified this was the first time he became aware of Russell Realty's connection with the property. Russell Realty was named as a defendant in the 1970 quiet title action.

At this time, Russell Realty's corporate agent, within the state was attorney Bolinger of Bozeman, Montana. He was duly registered as such with the Secretary of State. Also on file

- 3 -

with the Secretary of State was the name and address of Joseph Wirak, a director of Russell Realty and resident of Great Falls, Montana.

Kenneally, acting through attorney Geagan, had purchased a Bozeman gas station from Russell Realty in 1965. Attorney Bolinger, the corporate agent, handled the transaction for Russell Realty. In connection with that transaction, Geagan prepared an abstract of title in which he stated:

> "The corporate existence of the Joseph Russell Realty Company would appear to have terminated. But this examiner knows the contrary exists. The Joseph Russell Realty Company should for its protection secure and have recorded in Gallatin County a certified copy of its extension of corporate existence filed in Silver Bow County . . ."

Kenneally and Geagan both testified they did not connect the Russell Realty of this transaction with the Russell Realty which appeared as party defendant in the 1970 quiet title action.

Geagan testified he looked in the Butte city directory and telephone book, but was unable to find any listing for Joseph Russell Realty, Inc. He then contacted the Secretary of State whose office allegedly informed him that Russell Realty's principal office was in Butte, Montana and that there was no registered agent within the state.

Service of process on Russell Realty in the 1970 quiet title action was made under Rule 4(D)(2)(f), M.R.Civ.P. Basically, that rule allows service of process to be made on the Secretary of State if a defendant corporation cannot be located after a reasonably diligent search for certain officers and the registered agent has occurred. As required by the rule, the secretary mailed service of process to Butte, Montana, the asserted last known address of Russell Realty. It was returned undelivered.

The quiet title action proceeded without an appearance by Russell Realty and resulted in title being quieted in Mary Baker.

- 4 -

The property was eventually transferred back to Kenneally.

In 1973, attorney Bolinger, acting on behalf of Russell Realty, investigated the property, the transaction from Joseph Russell to Kenneally and Mary Baker's quiet title action. The result was the filing of this action for damages or alternatively for return of the property, which Russell Realty contends rightfully belongs to it. The court found:

> "That through mistake and inadvertence of attorney for Mrs. Mary Margaret Baker or the process serving agent for the State of Montana, Joseph Russell Realty Company, a corporation, was not before the court and any decree quieting title to the parcels of land as described in the complaint . . . was, as to Joseph Russell Realty Company, a corporation, null and void."

It concluded:

> "That Joseph Realty Company, a corporation is the true owner in fee simple of the property as described in the pleadings; that defendants have no right, title or interest in or to said property."

A judgment was entered accordingly and Kenneally was ordered to convey the land back to Russell Realty. Russell Realty was ordered to reimburse Kenneally for the taxes paid.

The following issues are presented on appeal:

1. Can Russell Realty maintain this action, which is essentially a collateral attack on the 1970 judgment quieting title in Kenneally's predecessor in interest?

2. Did Kenneally establish title by adverse possession under color of title?

3. Is Russell Realty entitled to punitive damages for slander of title?

4. Is Russell Realty entitled to attorney fees?

We are unable to agree with Kenneally that Russell Realty is barred from bringing this suit by the 1970 judgment quieting title in Kenneally's predecessor in interest. While it is a general rule that a judgment cannot be attacked in a collateral action

- 5 -

such attack is permissible if the first judgment is void for lack of jurisdiction. Hoffman's Estate (1957), 132 Mont. 387, 318 P.2d 230. It is axiomatic that if service of process on a party is improperly made, the court acquires no jurisdiction over that party, Haggerty v. Sherburne Merc. Co. (1947), 120 Mont. 386, 186 P.2d 884, and it may collaterally attack the judgment. This is such a case.

Jurisdiction over Russell Realty in the 1970 action was predicated on service of process made under Rule 4 (D)(2)(f), M.R.Civ.P. That rule provides:

> "When a claim for relief is pending in any court of this state against a corporation . . . that has filed a copy of its charter in the office of the secretary of state of Montana and qualified to do business in Montana . . . and none of the persons designated in D(2)(e) immediately above can with the exercise of reasonable diligence be found within Montana, the party causing summons to be issued shall exercise reasonable diligence to ascertain the last known address of any such person. Upon the filing with the clerk of court in which the claim for relief is pending of an affidavit reciting that none of the persons designated in D(2)(e) can after due diligence be found within Montana upon whom service of process can be made, and reciting the last known address of any such person, or reciting that after the exercise of reasonable diligence no such address for any such person could be found, and there has also been deposited with the said clerk the sum of $5.00 to be paid to the secretary of state as a fee for each of said defendants for whom the secretary of state is to receive said service, then the clerk of court shall issue an order directing process to be served upon the secretary of state of the state of Montana . . . .. Such affidavit shall be sufficient evidence of the diligence of inquiry made by affiant, if the affidavit recites that diligent inquiry was made, and the affidavit need not detail the facts constituting such inquiry."

We have recently construed the rule to require strict compliance. Shields v. Pirkle Refrigerated Freightlines (1979), ____Mont.____, 591 P.2d 1120, 1124, 36 St.Rep. 472, 477. The key language in the rule commands that reasonable diligence be used in locating the individuals listed in Rule 4(D)(2)(e), M.R.Civ.P. These persons include the corporation's registered agent and any

- 6 -

director of the corporation.

Keeping in mind that attorney Geagan and Kenneally had dealt with Russell Realty through its registered agent and should have been able to contact the company, and that the secretary of state had the name and address of the agent and a director on file, we are unable to find that a reasonably diligent search occurred.

The explanation offered by Kenneally excusing personal service is that the Secretary of State supplied his attorney with misinformation to the effect that Russell Realty had no registered agent in the state. The receipt of such information does not excuse or fulfill the due diligence requirement of Rule 4(D)(2)(f). Murdock v. Blake (1971), 26 Utah 2d 22, 484 P.2d 164, cited with approval by this Court in Shields v. Pirkle, ____Mont. at____, 591 P.2d at 1124, 36 St.Rep. at 477-478, supra. There being no diligent search, service of process on the Secretary of State was inadequate to confer jurisdiction over Russell Realty. Russell Realty is not barred from collaterally attacking the judgment where the court has never acquired jurisdiction over it by valid service of process.

Kenneally's claim to the property arises out of adverse possession under color of title. As a defendant in a quiet title action, the burden of proving such assertion is on Kenneally. Bearmouth Placer Co. v. Passerell (1925), 73 Mont. 306, 309, 236 P. 673.

Adverse possession under color of title is possession based on a written instrument which purports to pass title but which in reality does not. The Court has stated:

> " . . . for one who holds a land under a written
> instrument, a statute or a judgment or decree
> of court which appears to convey or confirm title,
> but does not do so in fact, holds under 'color of
> title'; that is to say he holds by virtue of some-
> thing which gives him a colorable title only . . ."

- 7 -

> "'What is meant by color of title? It may be defined to be a writing, upon its face profession to pass title, but which does not do it, either from a want of title in the person making it, or from the defective conveyance that is used--a title that is imperfect, but not so obviously so that it would be apparent to one not skilled in the law.'" Morrison v. Lind (1915), 50 Mont 396, 401-402, 147 P. 166.

Under Montana law, "An instruction which purports to convey land or the right to its possession is sufficient color of title as a basis for adverse possession if the claim is made in good faith." (Emphasis added.) Hentzy v. Mandan Loan & Inv. Co. (1955), 129 Mont. 324, 286 P.2d 325. See also Kuhn v. Chesapeake & O. Ry. Co. (4th Cir. 1941), 118 F.2d 400, 405; Sullivan v. Neel et al. (1937), 105 Mont. 253, 257, 73 P.2d 206; Fitschen Bros. Com. Co. v. Noyes Estate (1926), 76 Mont. 175, 196, 246 P. 773; Burby Real Property 3d Ed., §111, p. 272, 5 Thompson on Real Property §2553, p. 671.

Here, Kenneally's "title" is based on a quitclaim deed from an individual who was known by all parties concerned to have no interest whatsoever in the property. There is no trace of good faith and there is no color of title. Jumping Rainbow Ranch v. Conklin (1975), 167 Mont. 367, 371, 538 P.2d 1027, 1029.

Kenneally goes to great lengths to demonstrate the weakness of Russell Realty's title. However, the party asserting adverse possession must succeed on the strength of his own title and cannot rely on the weakness of his adversary. Jumping Rainbow Ranch v. Conklin, supra; Diamond Investment Co. v. Geagan (1969), 154 Mont. 122, 124, 460 P.2d 760, 761. These arguments are of no avail.

We turn next to Russell Realty's assertion that it is entitled to punitive damages for slander of title. Under section 27-1-221, MCA, punitive damages are recoverable "where the defendant has been guilty of oppression, fraud, or malice, actual or presumed . . ." We have stated that malice is an essential element in an action for slander of title and that it will be presumed.

- 8 -

Continental Supply Co. v. Price (1952), 126 Mont. 363, 376, 251 P.2d 553, 559. (Bottomly, J., specially concurring.)

As discussed above, we are of the opinion that Kenneally did not fulfill the requirement of good faith for adverse possession under color of title. This is not to say however that his actions were undertaken in bad faith, maliciously or with a willingness to disparage Russell Realty's title. Continental Supply Co. v. Price, 126 Mont. at 374, 251 P.2d at 558. The record discloses the following: Kenneally testified he did not know of Russell Realty's interest in the land when he took the quitclaim deed from Joseph Russell. Both Kenneally and Geagan testified they did not connect the Russell Realty with whom they had dealt previously with the Russell Realty which appeared in the abstract of title prepared for the 1970 quiet title action. Attorney Geagan testified that, upon inquiry, the Secretary of State did not disclose the address or presence of Russell Realty's registered corporate agent within the state. This testimony, if credible, sufficiently rebuts the presumption of malice. As the credibility of the witnesses is for the determination of the trial court, Voyta v. Clonts (1958), 134 Mont. 156, 378 P.2d 655, we do not disturb the finding of the District Court that Kenneally's actions were not fraudulent or malicious.

We finally turn to Russell Realty's contention it is entitled to attorney fees. The general rule is that in the absence of statute or contract, attorney fees will not be awarded. Bitney v. School District No. 44 (1975), 167 Mont. 129, 535 P.2d 1273; Nikles v. Barnes (1969), 153 Mont. 113, 454 P.2d 608.

There being no statutory or contractual provision for attorney fees in this case, Russell Realty argues that if another's fraudulent act is the cause of litigation, attorney fees will be awarded. Assuming such an exception to the common law rule prohibiting attorney fees to exist, Home Ins. Co. v. Pinski Brothers

- 9 -

(1972), 160 Mont. 219, 227-228, 500 P.2d 945, 950. See comment 40 Mont. L.Rev. 308, 318 (1979), it is not applicable here. Kenneally acted without good faith, but as explained above, we are unable to hold he acted fraudulently, maliciously or with bad faith toward Russell Realty. As such, attorney fees are not recoverable.

This Court has recognized the District Court's general equity power to make the injured party whole and in some isolated cases has upheld awards of attorney fees made in the exercise of this power. Holmstrom Land Co. v. Hunter (1979), ____Mont.____, 595 P.2d 360, 36 St.Rep. 926; Foy v. Anderson (1978), ____Mont. ____, 580 P.2d 114, 35 St.Rep. 811. Such an award is within the sound discretion of the trial court, Foy v. Anderson, 580 P.2d at 116, 35 St.Rep. at 814, and in the absence of an abuse of that discretion, we will not disturb a decision denying attorney fees. See Porter v. Porter (1970), 155 Mont. 451, 457, 473 P.2d 538, 541, for standard of review on matters where the trial court's discretion is involved. There is no abuse of discretion in this case.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

Mr. Justice John Conway Harrison dissenting:

This case is in my judgment on all fours factually with Jumping Rainbow Ranch v. Conklin (1975), 167 Mont. 367, 538 P.2d 1027. In that case the attorney gave his secretary ten dollars and a box of chocolates for a quitclaim; here Kenneally gave a man named Anderson five gallons of gasoline for a quitclaim deed knowing that Anderson had no interest whatsoever in the property. The majority here decide to accept the findings of the District Court in spite of the exact opposite holding in Jumping Rainbow. I believe the trial court's finding in the latter case, as we found, should be controlling in this case. I would reverse the findings of the District Court and return the case in light of our holding in Jumping Rainbow Ranch v. Conklin, supra.

_____
Justice

-11-