05-727

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 352

ROBERT NIKOLAISEN, JUDY NIKOLAISEN,
and PLENTYWOOD ELECTRIC, INC.,

        Plaintiffs and Appellees,

   v.

ADVANCE TRANSFORMER CO. and
JOHN DOES I - III,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Fifteenth Judicial District,
                    In and For the County of Sheridan, Cause No. DV 46-2004-11171
                    Honorable Katherine M. Irigoin, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Gerald B. Murphy and Matthew Braukmann, Moulton, Bellingham, Longo &
                Mather, Billings, Montana

        For Appellees:

                Loren J. O'Toole, III, O'Toole Law Firm, Plentywood, Montana

Submitted on Briefs:  October 31, 2007

Decided:  December 19, 2007

Filed:

_____
                         Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 The Plaintiffs, Plentywood Electric and Robert and Judy Nikolaisen (collectively "Plentywood"), seek damages from Advance Transformer Co. ("Advance") incurred when a fire destroyed Plentywood Electric. The fire was allegedly caused by a defective light ballast manufactured by Advance. The District Court of the Fifteenth Judicial District entered a default judgment in favor of Plentywood. Advanced moved for relief from the judgment. The motion was deemed denied as the District Court did not rule on it within the time provided. Advance now appeals from the denial of its motion to set aside the default judgment.

## ISSUES

¶2 Advance raises four issues on appeal. However, we determine that the District Court erred in not granting Advance's motion to set aside the default judgment pursuant to M. R. Civ. P. 60(b)(4), based on improper service of process. Therefore, we do not fully discuss the other issues Advance raises.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On November 19, 2002, a fire destroyed Plentywood Electric, owned by the Nikolaisens. The State Fire Marshall investigated the fire the following day and, according to Plentywood, concluded that a ballast manufactured by Advance had caused the fire. Within days, Plentywood notified Advance of the fire.

¶4 Upon notification of the potential claim against it, Advance and its insurer, Travelers Insurance Co. ("Travelers"), retained an investigator to visit the fire scene and inspect the ballast. Plentywood's insurer, Austin Mutual, also sent an investigator to inspect the scene and the ballast. The two investigators examined the ballast in January 2003 and again in

2

August 2003. Robert Erhardt, the Director of Technical Relations for Advance, attended the August 2003 inspection. In Erhardt's opinion, Advance had several defenses to liability.

¶5 On November 18, 2004, Austin Mutual, asserting a subrogation claim for payments it had made to Plentywood, filed suit against Advance, but did not serve its complaint. On November 19, 2004, Plentywood filed a complaint against Advance, seeking recovery of the uninsured portion of its alleged loss. Likewise, Plentywood made no attempt at that time to serve its summons and complaint.

¶6 On February 10, 2005, Plentywood's counsel sent Advance a demand letter for approximately $760,578.00, representing its claimed uninsured loss. The letter was addressed to Advance's office in Rosemont, Illinois, but was not directed to a particular individual. The letter stated that Plentywood would file a complaint if it did not receive Advance's reply by March 1, 2005. This letter reached Erhardt on or around February 15, at which time he contacted Tim Costello, the Technical Specialist for Travelers, and tendered the claim to Travelers. Erhardt also provided a copy of Plentywood's demand letter to Costello. On February 17, 2005, Costello contacted Plentywood's counsel and requested documentation supporting its claim. He also asked that counsel direct all future correspondence on the claim to him. During the several communications between them, Plentywood's counsel at no time mentioned that he had already filed a complaint against Advance.

¶7 On March 4, 2005, Plentywood's counsel provided the documentation that Travelers had requested. Counsel again indicated his intent to file a complaint against Advance if he did not hear from Travelers or Advance by March 20. On March 25, 2005, Costello

contacted Plentywood's attorney and informed him that, based on Advance's conclusion that valid defenses to the claim existed, an offer would not be forthcoming. Again, Plentywood's counsel did not mention that he had already filed a complaint.

¶8 On April 5, 2005, Plentywood's counsel filed an amended complaint against Advance. Despite knowing Advance's address, and having had prior contact with both Advance and its insurer Travelers, counsel did not advise either that he had filed the amended complaint. Nor did counsel make any attempt to serve Advance directly. Rather, on April 19, counsel for Plentywood filed an affidavit with the District Court for the purpose of having the Montana Secretary of State appointed as Advance's agent for service of process pursuant to M. R. Civ. P. 4D(2)(f). The Clerk of the District Court appointed the Montana Secretary of State as Advance's agent for service and on April 20, the Secretary of State was served with the original and the proper number of copies of the summons and the amended complaint, as well as a copy of Plentywood's counsel's affidavit. On April 25, 2005, the Secretary of State mailed the documents, return receipt requested, to Advance Transformer Co., at its address in Illinois provided by Plentywood's counsel.

¶9 On May 9, 2005, a courier employed by Advance signed for and accepted the documents. On May 11, 2005, the Secretary of State received the return receipt.

¶10 On June 8, 2005, after receiving no answer to the amended complaint, Plentywood's counsel requested entry of default against Advance, and the Clerk of District Court entered the default. On July 12, 2005, Plentywood's counsel moved for entry of a default judgment in the amount of $1,301,487.19, representing Plentywood's claimed uninsured loss, Austin Mutual's loss payments under its policy with Plentywood, and $165.00 in costs. On July 18,

4

2005, the District Court held a hearing on the matter. The record does not indicate that Plentywood's counsel informed the presiding judge that he had previously been in contact with Advance, that Advance was insured by Travelers, that he had been communicating with Travelers, or that Plentywood's claim had been denied. The District Court entered default judgment in favor of Plentywood in the amount of $1,301,487.19 together with interest at a rate of 10% until paid in full, pursuant to § 25-9-205(1), MCA.

¶11 On September 19, 2005, just after the 60 day window when Advance could obtain relief from the default judgment under M. R. Civ. P. 60(b)(1), Plentywood's counsel obtained an authenticated copy of the default judgment. Advance maintains that on September 30, 2005, it first discovered that Plentywood had filed a complaint against it and that a default judgment had been entered in the District Court. Both Costello and Erhardt state that they had no contact with Plentywood or Austin Mutual between March 25 and September 30, 2005.

¶12 Once Advance discovered the default judgment, it immediately retained counsel. On October 11, 2005, Advance moved to set aside the default judgment and filed an answer to Plentywood's amended complaint. Advance argued in its motion that no one "in authority at Advance" ever received the summons and amended complaint; therefore, service was inadequate, the default judgment should be set aside, and it should have the opportunity to defend.

¶13 Plentywood objected to the motion and moved to strike Advance's answer. The District Court did not act on the motion. On December 19, 2005, the District Court entered

5

an order stating that since more than 60 days had elapsed since Advance filed its motion to set aside the default judgment, it was deemed denied. Advance filed a timely appeal.

## STANDARDS OF REVIEW

¶14 In reviewing a default judgment, we are guided by the principle that a case should be decided on its merits; judgments by default are not favored. *Matthews v. Don K Chevrolet*, 2005 MT 164, ¶ 9, 327 Mont. 456, ¶ 9, 115 P.3d 201, ¶ 9 (citations omitted). We generally review the denial of a motion to set aside a default judgment for only a slight abuse of discretion. The party seeking to set aside a default judgment has the burden of proof. *Matthews*, ¶ 9. However, we will also review a district court's conclusions of law to determine if they are correct. *Fonk v. Ulsher*, 260 Mont. 379, 383, 860 P.2d 145, 147 (1993). Whether the district court has jurisdiction over the case is a conclusion of law. *Semenza v. Kniss*, 2005 MT 268, ¶ 9, 329 Mont. 115, ¶ 9, 122 P.3d 1203, ¶ 9.

## DISCUSSION

¶15 Advance argues the District Court abused its discretion when it denied the motion to set aside the default judgment because Plentywood did not correctly serve Advance as required by M. R. Civ. P. 4D(2), (3).

¶16 A default judgment may be set aside if the judgment is void. M. R. Civ. P. 60(b)(4). If the plaintiff does not properly serve the defendant pursuant to M. R. Civ. P. 4D, the judgment is void because without proper service the district court does not obtain personal jurisdiction over a party. *See Ihnot v. Ihnot*, 2000 MT 77, ¶ 8, 299 Mont. 137, ¶ 8, 999 P.2d 303, ¶ 8. Each step of the procedure prescribed by Rule 4D requires strict and literal compliance to support a judgment based on substituted or constructive service. *Shields v.*

6

*Pirkle Refrigerated Freightlines Inc.*, 181 Mont. 37, 43-44, 591 P.2d 1120, 1124 (1979), *overruled on other grounds*, *Roberts v. Empire Fire & Marine Inc. Co.*, 276 Mont. 225, 228, 915 P.2d 872, 873 (1996); *Ihnot*, ¶ 13. *See also Joseph Russell Realty Co. v. Kenneally*, 185 Mont. 496, 502, 605 P.2d 1107, 1110 (1980).

¶17    M. R. Civ. P. 4D outlines the procedure for service of summons upon an out-of-state corporation, such as Advance.  Reference to several parts of the Rule is necessary.

¶18    Rule 4D(2)(e) provides that service may be had upon a corporation doing business in Montana by delivering a copy of the summons and complaint to an officer, director, manager, or associate for such corporation; or by leaving such copies at the office or place of business of the corporation, with the person in charge of such office.  Rule 4D(3) provides that "[w]here service upon any person cannot, with due diligence, be made personally within this state, service of summons and complaint may be made outside this state in the manner provided for service within this state, with the same force and effect as though service had been made within this state."  Thus, Advance, an out-of-state corporation, is to be served in the same manner as a corporation that is found in Montana.

¶19    Rather than attempt to serve Advance as provided in Rules 4D(2)(e) and 4D(3), Plentywood went straight to the provisions of Rule 4D(2)(f), which is designed to accomplish service on an out-of-state corporation when personal service cannot be accomplished with reasonable diligence.  In pertinent part, Rule 4D(2)(f), states:

> [If] none of the persons designated in D(2)(e) immediately above [i.e., officer, director, manager . . . superintendent or managing or general agent, or partner, or associate for such corporation] can with the exercise of reasonable diligence be found within Montana, the party causing summons to be issued shall exercise reasonable diligence to ascertain the last known address of any

7

such person. *If, after exercising reasonable diligence, the party causing summons to be issued is unsuccessful in serving said parties,* an affidavit must be filed with the clerk of court in which the claim for relief is pending reciting that none of the persons designated in D(2)(e) can after due diligence be found within Montana upon whom service of process can be made, and reciting the last known address of any such person . . . .

M. R. Civ. P. 4D(2)(f) (bracketed material and emphasis added).

¶20 In order to utilize the provisions of Rule 4D(2)(f) and complete service of process by service on the Montana Secretary of State, Plentywood was first required to exercise reasonable diligence to find an officer or other representative of Advance to serve in Montana. Since there was no agent for Advance in Montana, Plentywood's counsel was next required to use reasonable diligence to ascertain Advance's address. As counsel well knew Advance's address, the Rule required that Plentywood attempt service at that address. Only when, after the exercise of reasonable diligence, "the party causing the summons to be issued is unsuccessful in serving" the summons and complaint may that party effectively substitute service on Secretary of State. M. R. Civ. P. 4D(2)(f).

¶21 The obvious reason for the procedure allowing service through the Secretary of State is to allow for personal service when a company cannot be otherwise served in the manner provided for in Rule 4D(2)(e) and Rule 4D(3). There is no reason to include in Rule 4D(2)(f) the statement that the party seeking service upon a company which cannot be found in Montana must be "unsuccessful in serving said parties" before filing the affidavit for service on the Secretary of State, if it is not necessary to have first unsuccessfully attempted such service. This interpretation of Rule 4D(2)(f) is also required by its provision concerning service on a corporation by service on the Secretary of State, as follows: "[i]n

8

any action where due diligence has been exercised to locate *and serve* any of the persons designated in D(2)(e) above, service shall be deemed complete upon said corporation." M. R. Civ. P. 4D(2)(f) (emphasis added). Again, only after a party has exercised reasonable diligence to personally serve the out-of-state corporation can the Secretary of State be appointed the agent of such corporation for service of process.

¶22 The dissent fails to recognize that the rules for service of process must be strictly followed because notice and opportunity to be heard are of the utmost importance. Thus, strict and literal compliance with the rules is necessary. *E.g. Shields*, 181 Mont. at 43-44, 591 P.2d at 1124. Compliance with the rules not only serves due process; it avoids the problems illustrated by this case. Had Plentywood's counsel followed the service requirements of Rule 4D(2)(e) and Rule 4D(3), as noted above, the summons and complaint would have been personally delivered to Advance by a process server.

¶23 As noted by the dissent, Plentywood's counsel, knowing full well where to send the summons and complaint, did have the option of service by mail. However, service by mail is not accomplished by simply mailing the summons and complaint, return receipt requested. Service by mail under Rule 4D(1)(b) is completed only when the serving party receives and files a notice and acknowledgement conforming substantially to Form 18-A. This acknowledgment must state that an authorized representative of Advance declared before a notary, under penalty of perjury, that he or she received a copy of the summons and complaint, along with stating the person's relationship to Advance, as well as his or her authority to receive service of process. M. R. Civ. P. 4D(1)(b), Form 18-A. This is in sharp contrast to the return receipt sent to the Secretary of State saying only that a courier had

9

picked up the mail. Clearly, Plentywood did not comply with the applicable Rule for service by mail. The facts illustrate that this is not a case of "no harm no foul," as the dissent implies.

¶24     Because Plentywood's counsel did not attempt to directly serve Advance before affecting service through the Secretary of State, service was improper and did not comply with Rule 4D(2), (3). Failure to affect proper service of process deprived the District Court of personal jurisdiction over Advance, rendering the default judgment void as a matter of law. *Ihnot*, ¶ 8. The District Court, therefore, erred when it did not set aside the default judgment.

¶25     Reversed and remanded for further proceedings consistent with this Opinion.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE

Justice Warner specially concurs.

10

¶26 In my view, another facet of this case must be mentioned. While there is no record concerning Advance's motion to set aside the default judgment, we know that Plentywood's counsel had been in communication with Advance and its insurer Travelers prior to and after filing the first complaint and that he knew Advance intended to defend the claim. Also, Plentywood's counsel knew Advance's address, yet made no attempt to serve it directly or to inform either Advance or Travelers that Plentywood had filed suit.

¶27 Under similar facts, we have strongly disapproved of the entry of a default judgment. *Maulding v. Hardman*, 257 Mont. 18, 25-26, 847 P.2d 292, 297 (1993). In *Maulding*, counsel had been in contact with defendant's insurer that covered the claim, proceeded at all times with an eye toward collecting from the insurance company once he obtained a judgment for his client, and did not advise the insurer of the application for a default judgment. We noted in *Maulding* that Rule 3.3 of the Rules of Professional Conduct "requires a lawyer in ex parte proceedings to inform the court of all material facts known by the lawyer whether or not they are adverse." *Maulding*, 257 Mont. at 26, 847 P.2d at 298. Similar to *Maulding*, the record here contains no indication that Plentywood's counsel disclosed to the District Court that he had been in contact with both Advance and Travelers and knew that they had denied liability. At the July 18, 2005, hearing regarding the default judgment, Plentywood's counsel informed the District Court that he had sent a copy of the proposed default judgment to Plentywood's insurer, Austin Mutual. However, nothing in the record suggests that the District Court knew that counsel had also been in communication

11

with Advance and Travelers. What record there is in this case suggests that both Advance and Travelers may have been sandbagged.[1] This Court does not countenance such conduct.

/S/ JOHN WARNER

Chief Justice Karla M. Gray and Justice James A. Rice join in the foregoing concurrence.

/S/ KARLA M. GRAY
/S/ JIM RICE

---

[1] The term "sandbagged," in the present context derives from the tactic of a poker player to trap another player by checking a strong hand to induce a bet, and then raising once that bet is made. *Webster's Third New International Dictionary*, *Unabridged* 2009 (Philip Babcock Gove, ed., Merriam-Webster, Inc. 2002). In law it has come to mean, inter alia, the practice of unfairly remaining silent concerning an important point in order to lull another party to inaction. *See U.S. v. Pielago*, 135 F.3d 703, 709 (11th Cir. 1998); *State v. Mendoza-Solorio*, 33 P.3d 411, 416 (Wash. App. Div. 3 2001); *DeShields v. State*, 534 A.2d 630, 645 (Del. 1987); *Gilbert v. K.T.I., Inc.*, 765 S.W.2d 289, 295 (Mo. App. W. Dist. 1988); *Wiard v. Liberty Northwest Ins. Corp.*, 2003 MT 295, ¶ 50, 318 Mont. 132, ¶ 50, 79 P.3d 281, ¶ 50 (Nelson, J., concurring).

Justice Patricia O. Cotter dissents.

¶28     I dissent. Because service was properly and actually effected, I would affirm the judgment of the District Court.

¶29     The Court faults Plentywood for failing to strictly follow the requirements of M. R. Civ. P. 4(D). The Court concludes that Plentywood should not have served Advance through the Secretary of State under Rule 4D(2)(f), but rather should have effected service under M. R. Civ. P. 4(D)(3), the "personal service outside the state" Rule. I disagree with the Court's analysis.

¶30     The Court relies upon *Joseph Russell Rlty. Co. v. Kenneally*, 185 Mont. 496, 605 P.2d 1107 (1980), for the proposition that there must be strict and literal compliance with each step of the procedure described in Rule 4D. Opinion, ¶ 16. Indeed, we stated in *Russell* that "[t]he key language in [Rule 4D(2)(f)] commands that reasonable diligence be used in locating the individuals listed in Rule 4 (D)(2)(e), M.R.Civ.P. These persons include the corporation's registered agent and any director of the corporation." *Russell Realty*, 185 Mont. at 502, 605 P.2d at 1110. In *Russell Realty*, we noted, among other things, that Kenneally and his attorney had had previous dealings with Joseph Russell Realty's registered agent; therefore, they knew who to contact for service of process. However, rather than serve this registered agent, the realty company attempted service through the Secretary of State, and that service failed. We concluded that the failed service of process attempted through the Secretary of State did not confer jurisdiction over Russell Realty and the subsequent default judgment was void. *Russell Realty*, 185 Mont. at 502-03, 605 P.2d at

13

¶11. Here, by contrast, and as further explained below, we are dealing with an out-of-state corporation, whose individual agents or directors were unknown to Plentywood.

¶31 Plentywood served Advance via the Secretary of State under Rule 4D(2)(f). The relevant portions of 4D(2)(f) provide:

(2) Personal service within the state. The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:
. . .
(f) When a claim for relief is pending in any court of this state against a corporation . . . organized under the laws of any other state . . . which is subject to the jurisdiction of the courts of this state under the provisions of Rule 4B above, . . . and none of the persons designated in D(2)(e) immediately above [i.e., officer, director, manager, . . . superintendent or managing or general agent, or partner, or associate for such corporation] can with the exercise of reasonable diligence be found within Montana, the party causing summons to be issued shall exercise reasonable diligence to ascertain the last known address of any such person. If, after exercising reasonable diligence, the party causing summons to be issued is unsuccessful in serving said parties, an affidavit must be filed with the clerk of court in which the claim for relief is pending reciting that none of the persons designated in D(2)(e) can after due diligence be found within Montana upon whom service of process can be made, and reciting the last known address of any such person, or reciting that after the exercise of reasonable diligence no such address for any such person could be found. . . . The clerk of court shall issue an order directing process to be served upon the secretary of state of the state of Montana . . . . Such affidavit shall be sufficient evidence of the diligence of inquiry made by affiant, if the affidavit recites that diligent inquiry was made, and the affidavit need not detail the facts constituting such inquiry. . . . The said clerk of court shall then mail to the secretary of state the original summons, one copy of the summons and one copy of the affidavit for the files of the secretary of state, one copy of the summons attached to a copy of the complaint for each of the defendants to be served by service upon the secretary of state, and the fee for service, to the office of the secretary of state. The secretary of state shall mail copy of the summons and complaint by certified or registered mail with a return receipt requested to the last known address of any of the persons designated in D(2)(e) above, if known, or, if none such is known and it is a corporation not organized in Montana, to the secretary of state of the state in which such corporation or limited liability company was originally incorporated, if known; and the secretary of state shall make a return as

14

hereinafter provided under Rule 4D(6). When service is so made, it shall be deemed personal service on such corporation . . . and the said secretary of state . . . is hereby appointed agent of such corporation . . . . In any action where due diligence has been exercised to locate and serve any of the persons designated in D(2)(e) above, service shall be deemed complete upon said corporation . . . regardless of the receipt of any return receipt or advice of refusal of the addressee to receive the process mailed, as is hereinafter required by 4D(6); provided, however, that except in those actions where any of the persons designated in D(2)(e) above have been located and served personally as hereinabove provided, then service by publication shall also be made as provided hereafter in 4D(5)(d) and 4D(5)(h) . . . .

¶32 Rule 4D(3), upon which the Court relies, provides:

Personal service outside the state. Where service upon any person cannot, with due diligence, be made personally within this state, service of summons and complaint may be made by service outside this state in the manner provided for service within this state, with the same force and effect as though service had been made within this state. . . .

¶33 Rule 4D(3) speaks in terms of "service upon any person" outside the state. Likewise, Rule 4D(2)(f) requires due diligence to *locate and serve any of the persons* designated in Rule 4D(2)(e)—i.e., an officer, director, manager, etc. or the registered agent. Significantly, Plentywood never dealt with any particular person in its prior mailings to Advance, nor did Advance have a designated agent for service of process on file with the Secretary of State. While it is technically correct that Plentywood knew where to locate an authorized person, none of the letters contained in the record that were sent to Advance's corporate offices were addressed to a particular recipient; rather, the demand letters sent by Plentywood were addressed "To Whom it May Concern" and "Dear Sirs." It therefore appears that Plentywood was communicating with a corporate entity without the benefit of knowing who, within the company, was an actual officer or manager.

15

¶34 The record further establishes and it is undisputed that Advance's Director of Technical Relations Robert Erhardt, who had investigated the fire on behalf of Advance, had received the previous correspondence from Plentywood, and that he had in turn arranged a prompt response to Plentywood's letters by one Tim Costello, a representative of its insurer, Traveler's Insurance Company. The record contains no letters, however, from Erhardt to Plentywood or Plentywood's insurer, Austin Mutual, nor does the record contain any reference to telephone communications between Erhardt and Plentywood's representatives. In fact, from the District Court record, the only known contacts Plentywood had with Advance were with its hired investigator and Tim Costello with Travelers, neither of whom was an officer or director of the company and neither of whom could have accepted service of a complaint on behalf of Advance. Therefore, despite "several letters to Advance's Illinois address," Plentywood had no personal contact person within Advance. As a result, had Plentywood attempted to effect service under Rule 4D(3), it would have been obliged to pursue the same course—i.e., it would have simply mailed the Summons and Complaint to Advance's Illinois address, expecting that it would be received as had the previous communications.

¶35 This is exactly the course pursued by the Montana Secretary of State's office. While under Rule 4D(2)(f), the Secretary of State could have mailed the Summons and Complaint to the Secretary of State of the state in which Advance was originally incorporated, it sent the documentation directly to Advance's Illinois office—the same Illinois address where Plentywood had previously and successfully sent its letters—and where it was accepted and signed for by a courier hired by Advance.

16

¶36 Returning again to *Russell Realty,* we held that Kenneally's attempt at service of process upon Russell Realty was inadequate to confer jurisdiction over Russell Realty, explaining that Kenneally had not conducted a diligent search within the State prior to initiating service through the Secretary of State. The Court noted that both Kenneally and his attorney Geagan had previously had direct dealings with Russell Realty representatives in Butte, and that the Secretary of State had the name and address of the company's agent, who was the same agent Kenneally and Geagan had dealt with in a prior land purchase. In other words, Kenneally, with virtually no diligence required, knew whom to serve.

¶37 Here, Plentywood had no "personal" connection prior to service of the Complaint with any particular person from Advance; in fact, it was Advance's decision—and not Plentywood's—to funnel all communications from Plentywood directly to Travelers, instead of identifying for Plentywood a named officer or agent of Advance for contact purposes. Additionally, as noted above, the fact that the correspondence from Plentywood and Austin Mutual to Advance, sent to the corporate office address without designation of an individual recipient, had consistently resulted in prompt responses gave Plentywood confidence that service to the corporate address was adequate. Finally, and notably, while Russell Realty never received notice of the suit because the documents were returned undelivered, Advance's courier accepted service and returned the signed receipt to the Secretary of State.

¶38 As required by Rule 4D(2)(f), Plentywood's counsel filed an affidavit stating that it had exercised reasonable diligence in attempting to find a Montana address for Advance or to identify and locate an Advance director, manager or agent in Montana to serve. Plentywood further provided, as required by the statute, Advance's last known address, i.e.,

17

its Illinois address. Rule 4D(2)(f) expressly states that an affidavit like the one filed in this case "shall be sufficient evidence of the diligence of inquiry made by affiant, if the affidavit recites that diligent inquiry was made, and the affidavit need not detail the facts constituting such inquiry."

¶39 The Court faults Plentywood for not using a process server, or in the alternative service by mail with a return acknowledgement form enclosed. However, the Court's reasoning is wholly circular. The method of service that the Court describes at ¶¶ 22-23 is that which is perfected under Rule 4D(1)(b). If service under this Rule can be accomplished, then a party need not resort to 4(D)(2)(f), which is what was required of Plentywood here, for the reasons cited above. It was *because* Plentywood did not know the identity of an authorized representative or "the person to be served" that it was forced to turn to Rule 4D(2)(f) in the first place.

¶40 The Court wholly fails to take account of the important fact that Advance's own courier, who had the authority to sign for certified mail, was the person who signed for and received the Summons and Complaint. Thus, service was in fact accomplished here. Though Advance later argued that its courier should not have accepted the Summons and Complaint, the fact is he was authorized by Advance to do so and did in fact do so. Therefore, unlike the situation in *Russell,* service here did not fail.

¶41 Finally, the Court takes Plentywood to task for its failure to inform Advance or Travelers that suit had been filed. Opinion, ¶ 23. In so doing, the Court ignores the fact that service was actually accomplished, and the court file reflected that the return receipt was received. It should go without saying that Plentywood was entitled to rely on the signed

18

return receipt in the court file as proof of service. There is no rule requiring a plaintiff to ignore a return receipt and independently verify receipt of the Complaint. However, we come very close to announcing such a new rule here.

¶42 In sum, I would conclude that Plentywood's service through the Secretary of State was statutorily authorized and successfully executed in accordance with Rule 4. Moreover, service under both Rule 4D(3) and 4D(2)(f) would effect exactly the same result as was accomplished here—service at the company's last known address. Therefore, I would conclude the District Court obtained jurisdiction and that it did not err in failing to set aside the default judgment under M. R. Civ. P. 60(b)(4), for lack of jurisdiction. Moreover, I would reach the merits of the case and affirm in all particulars. I dissent from our refusal to do so.

/S/ PATRICIA COTTER

Justice James C. Nelson joins in the dissent of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON

19